Argued and submitted February 13, reversed and remanded June 14, 1989

# LUSK,
*Appellant,*

*v.*

# MONACO MOTOR HOMES, INC.,
*Respondent.*

## (16-87-06402; CA A49132)

775 P2d 891

Leslie M. Swanson, Jr., Eugene, argued the cause for appellant. With him on the briefs was Swanson & Walters, P.C., Eugene.

Joel S. DeVore, Eugene, argued the cause for respondent. With him on the brief was Luvaas, Cobb, Richards & Fraser, P.C., Eugene.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

Riggs, J., specially concurring.

## GRABER, P. J.

Plaintiff appeals from a summary judgment for defendant, his former employer,[1] in this personal injury case. The trial court held that plaintiff's exclusive remedy is under the Workers' Compensation Law. Plaintiff alleged that defendant deliberately intended to produce the injury that he suffered, but the trial court held that there was no genuine issue of material fact that would support that assertion. We reverse.

We state the facts most favorably to plaintiff, drawing all reasonable inferences in his favor. *State ex rel Redden v. Will. Recreation,* 54 Or App 156, 159, 634 P2d 286 (1981). Defendant builds mobile homes and, as part of the production process, paints portions of them. Before September, 1985, defendant subcontracted the painting, but at that time it installed two painting booths and hired defendant as one of its painters. The booths were designed to keep dirt and particles off the painted surfaces and to speed up drying; they were not designed to provide adequate ventilation for those using them. During spray painting, plaintiff worked in a cloud of paint mist and vapors.

Many of the paints that defendant used contained isocyanates. The product container labels warned that the spray and vapors could cause lung injuries and allergic respiratory reactions and required that those working with the paints use supplied-air respirators. Defendant furnished only cartridge respirators whose labels warned against use with paints containing diisocyanates. Defendant did not warn plaintiff of the dangers to which he was exposed. He learned of them only by reading the warning labels.

In November, 1985, plaintiff began to get sick from the paint. He had headaches, felt dizzy and nauseous, became disoriented and irritable, and suffered memory loss. He asked his supervisor for a supplied-air respirator. Twice he told an inspector for defendant's workers' compensation insurer of the need; in the second conversation, the inspector expressed surprise that defendant had taken no action. A state inspector told defendant that supplied-air respirators would soon be required by the government. Plaintiff's supervisor asked

---

[1] The employer's workers' compensation insurer also was a defendant. It was dismissed from the action and is not a party to this appeal.

defendant to furnish a supplied-air system several times, including once in writing. In February or March, 1986, defendant brought in a supplied-air system for the painters to try out for a few days, but it refused to buy the system, because it did not wish to spend the necessary $2,000 per unit. Plaintiff's symptoms became worse and, on the advice of his physician, he quit as of June 4, 1986. He filed a workers' compensation claim and received benefits. Because of his sensitivity to hydrocarbons, which resulted from his exposure to the paint while working for defendant, plaintiff is permanently disabled from working as a painter.

ORS 656.018 provides, in pertinent part:

"(1)(a) The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of compensable injuries to the subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries or claims resulting therefrom * * *.

"* * * * *

"(2) The rights given to a subject worker and the beneficiaries of the subject worker for compensable injuries under ORS 656.001 to 656.794 are in lieu of any remedies they might otherwise have for such injuries against the worker's employer * * * except to the extent the worker is expressly given the right under ORS 656.001 to 656.794 to bring suit against the employer of the worker for an injury."

Plaintiff recognizes that ORS 656.018 would normally foreclose him from seeking damages from defendant. He argues, however, that he is exempt from the normal rule under ORS 656.156(2), which provides:

"If injury or death results to a worker from *the deliberate intention of the employer of the worker to produce such injury* or death, the worker, the widow, widower, child or dependent of the worker may take under ORS 656.001 to 656.794, and also have cause for action against the employer, as if such statutes had not been passed, for damages over the amount payable under those statutes." (Emphasis supplied.)[2]

---

[2] ORS 656.804 provides that an occupational disease "is considered an injury for employes of employers who have come under ORS 656.001 to 656.794." Therefore, both ORS 656.018 and ORS 656.156 apply, whether plaintiff suffered an injury or an occupational disease.

**1.** Plaintiff argues that a jury could find that defendant knew that the paint fumes were injuring him and that it made a conscious decision to continue to expose him to the hazard with that knowledge; from those facts, he states, a jury could infer that defendant deliberately intended to injure him. He points out that OEC 311(1)(a) creates a presumption that a "person intends the ordinary consequences of a voluntary act." Plaintiff insists that he can prove deliberate intent to produce the injury by showing that defendant desired "to cause the consequences of [its] act, or that [it] believe[d] that the consequences are substantially certain to result from it." *Restatement (Second) Torts,* § 8A. He contends, *quoting Restatement (Second) Torts,* § 8A, comment b, that if "[d]efendant knows [that] the consequences of his refusal to provide a fresh air supply to a painter using IMRON are 'substantially certain' to occur, yet he still refuses to provide one, 'he is treated by the law as if he had in fact desired to produce the result.' " Plaintiff, in short, assumes that the statutory phrase "deliberate intention * * * to produce such injury" establishes the same standard as does the term "intent" in the common law of intentional torts. If he were correct, we would have no difficulty in holding that he has shown enough to defeat defendant's motion for summary judgment. However, plaintiff wrongly interprets the statutory standard.

In *Jenkins v. Carman Mfg. Co,* 79 Or 448, 155 P 703 (1916), the plaintiff alleged that the defendant knew that one of the rolls in a lumber roller in its mill was defective and dangerous, had neglected to repair or replace it, and had required its employes to work near the roller with the deliberate intention of subjecting them to the risk of injury and to injury. On the basis of those allegations, the plaintiff sought damages for injuries that he suffered when the defective roll caught a piece of lumber and threw it against him. The trial court sustained the defendant's demurrer. 79 Or at 451-452. The Supreme Court treated the pleading as alleging negligence, recklessness, and a deliberate intent to subject the plaintiff to the risk of injury, but held that the complaint was insufficient to allege a deliberate intent to injure the plaintiff:

> "If defendant deliberately intended to wound plaintiff or his fellow-workmen and intentionally used this broken roll as he [*sic*] would have used an ax or a club to produce the intended

injury, it is liable; otherwise it is not. *A deliberate act is one the consequences of which are weighed in the mind beforehand.* It is prolonged premeditation, and the word when used in connection with an injury to another denotes design and malignity of heart. * * *

"We think by the words 'deliberate intention to produce the injury' that the lawmakers meant to imply that *the employer must have determined to injure an employee* and used some means appropriate to that end; that *there must be a specific intent,* and not merely carelessness or negligence, however gross." 79 Or at 453. (Emphasis supplied.)

In later cases, the court has adhered to the standard that it established in *Jenkins v. Carman Mfg. Co., supra. See Duk Hwan Chung v. Fred Meyer, Inc.,* 276 Or 809, 556 P2d 683 (1976); *Bakker v. Baza'r, Inc.,* 275 Or 245, 551 P2d 1269 (1976); *Caline v. Maede,* 239 Or 239, 396 P2d 694 (1964); *Weis v. Allen,* 147 Or 670, 35 P2d 478 (1934); *Heikkila v. Ewen Transfer Co.,* 135 Or 631, 297 P 373 (1931).[3] Only in *Weis v. Allen, supra,* did it hold that a plaintiff had satisfied the statutory criteria. There, the defendant had installed spring guns, which he knew to be illegal, at several places in his junk yards. The plaintiff knew of the guns and the way to disarm them. One evening, the defendant told the plaintiff that he would not set a particular gun that night. The next morning, the plaintiff opened the door that that gun protected without first disarming it and was injured when it fired. The court held that the jury could have found that the defendant, despite what he had told the plaintiff, had set the gun with the deliberate intention of injuring anyone who might inadvertently cause it to be discharged. That finding was sufficient to support the verdict for the plaintiff:

"It was not necessary here to prove that the defendant had singled the plaintiff out and set the gun with the express purpose of injuring him and no one else. *The act which the defendant did was unlawful and was deliberately committed*

---

[3] Other states follow similar standards, although the statutory phrasing varies:

"Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character." 2A Larson, *Workmen's Compensation Law,* § 68.13. (Footnotes omitted.)

*by him with the intention of inflicting injury."* 147 Or at 681. (Emphasis supplied.)

As the cases show, ORS 656.156(2) does not permit an employe to avoid the exclusivity provision of ORS 656.018 simply by showing that the employer took actions the natural consequence of which was to produce the employe's injury. The statutory exemption applies only if the injury results "from the deliberate intention of the employer of the worker to produce such injury * * *." That phrase requires, in addition to the intent that will normally suffice to prove an intentional tort, that the injury be "deliberate," in the sense that the employer has had an opportunity to weigh the consequences and to make a conscious choice among possible courses of action, and also that the employer specifically intend "to produce * * * injury" to someone, although not necessarily to the particular employe who was injured. An employe does not satisfy those requirements by showing that the employer refused to provide safety equipment, even if injury is the necessary result of that failure. It is not enough for the employer to act with conscious indifference to whether its actions will produce injury; it must *intend* to produce injury.[4]

**2.** In this case, plaintiff alleged, in the words of the statute, that defendant acted "with [the] deliberate intention to produce [his] injury." The question is whether the evidence before the trial court at the time of summary judgment would permit a jury to find that he had proved that allegation. A jury could find that defendant knew that plaintiff was suffering injury from the paint, knew that he would continue to do so as long as he worked without a supplied-air respirator and, after deliberation, consciously decided not to provide such a respirator. It could, therefore, find that defendant's acts were "deliberate."

**3, 4.** The more difficult question is whether it could find that defendant specifically intended "to produce [an] injury."

---

[4] The special concurrence focuses on the "certainty" of injury, that is, *whether* the employe will be hurt, rather than on the intent behind the injury, that is, *why* the employe will be hurt. An injury can result "certainly" from negligence or conscious indifference and thus not meet the statutory standard. Conversely, an employer can have the specific intent to produce an injury that was not "certain" to result from its acts, as in *Weis v. Allen, supra.* The special concurrence would read the word "deliberate" out of the statute. Moreover, it fails to address the other (and, in this case, more difficult) requirement of the statute: the specific intent "to produce [the] injury."

The affidavits suggest that defendant failed to provide the respirator because of the cost. Such a reason, while perhaps not laudable, is not a specific intent to produce an injury. However, the trial court on summary judgment, like a jury, need not accept defendant's proferred reason in isolation. Specific intent to injure may be inferred from the circumstances. *See State of Oregon v. Carver,* 22 Or 602, 603-04, 30 P 315 (1892).

Here, a jury could infer, from all of the circumstances, that defendant failed to provide the respirator *because* it wished to injure plaintiff: Defendant knew that the paint was highly toxic and that plaintiff's resulting injury was substantial and continuing; it did not follow the warnings of the paint manufacturer and the urging of its insurer to furnish a supplied-air respirator; plaintiff and his supervisor had complained about the problem repeatedly; and the cost of proper, available equipment (which defendant knew would soon be required by the state) was not prohibitive. A specific intent to produce injury is not the only permissible inference to be drawn from defendant's apparent obstinacy, but it is one that a jury should be permitted to consider.[5] *See State v. Livings,* 487 So 2d 475 (La App 1986). It is for the finder of fact, not the court on summary judgment, to determine what inferences to draw. *See Paulsen v. Continental Porsche Audi,* 49 Or App 793, 800, 620 P2d 1384 (1980). "Summary judgment is particularly inappropriate where 'the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions.' " *Cross v. United States,* 336 F2d 431, 433 (2nd Cir 1964), *quoting Empire Electronics Co. v. United States,* 311 F2d 175, 180 (2nd Cir 1962). The trial court erred, therefore, in granting defendant's motion for summary judgment.

Reversed and remanded.

---

[5] Defendant retorts that "[p]laintiff's standard cuts both ways[,]" because, if its conduct met the criteria of ORS 656.156(2), then, by continuing to work under the conditions, plaintiff also deliberately intended to produce his injury under ORS 656.156(1). In an appropriate workers' compensation case, a factfinder might draw such an inference. However, ORS 656.156(1) is not directly pertinent here; plaintiff has already received workers' compensation benefits. Defendant has pleaded that plaintiff was negligent. Assuming that that theory is available when plaintiff alleges a deliberate intention to produce the injury, his comparative fault, if any, is not before us at this time.

**RIGGS, J.,** specially concurring.

Although the majority reaches the correct result, it does so in a disingenuous manner that is contrary to sound public policy and is not required by precedent.

The majority attempts to draw a distinction between "intent" and "deliberate intent," but can do no better than to require "that the injury be 'deliberate,' in the sense that the employer has had an opportunity to weigh the consequences and to make a conscious choice among possible courses of action * * *." 97 Or App at 188. That analysis adds nothing to the meaning of "intent;" moreover, the majority's test is satisfied in this case. Plaintiff alleges that defendant was aware of the consequences of its actions, was aware of the existence of alternative courses of action and deliberately chose to inflict injury on plaintiff rather than adopt a different course. Neither statute nor policy requires that an employer be provided with an exemption from tort liability for having made such a choice. ORS 656.156(2); 2A Larson, *Workmen's Compensation Law,* 13-60 to 13-68, § 68.15 (1988).

This is not a case in which the pleadings allege a deliberate intent by the employer to subject the plaintiff to a *risk* of injury, but rather it is one in which the employer is alleged to have deliberately *injured* plaintiff through its actions in refusing to supply him with proper safety equipment. All, save one, of the Supreme Court's cases dealing with the exclusivity provision of the Worker's Compensation Law are of the first type and hold that a deliberate intent to subject a worker to a *risk* of injury is insufficient to establish tort liability. *See Duk Hwan Chung v. Fred Meyer, Inc.,* 276 Or 809, 556 P2d 683 (1976); *Caline v. Meade,* 239 Or 239, 396 P2d 694 (1964); *Heikkila v. Ewen Transfer Co.,* 135 Or 631, 297 P 373 (1931); *Jenkins v. Carman Mfg. Co.,* 79 Or 448, 155 P 703 (1916). This case is different. A jury could find that defendant deliberately compelled plaintiff to work in an environment certain to cause him injury, intending to cause that injury rather than modify the work environment. In that sense, the case is more like *Weis v. Allen,* 147 Or 670, 35 P2d 478 (1934), than it is like the other cited cases, even though the defendant in *Weis* was not shown to have intended to injure the plaintiff in particular. As in *Weis,* plaintiff alleges that defendant has

engaged in a course of conduct to which the Worker's Compensation Law does not lend its protection from tort liability. The trial court erred in ruling on a summary judgment motion that plaintiff's allegations failed to state the statutory requirement of intent.