Robert John GULDEN,
Plaintiff–Appellant,

v.

CROWN ZELLERBACH CORPORA-
TION, a Nevada corporation,
Defendant–Appellee.

Gregory STEELE, Plaintiff–Appellant,

v.

CROWN ZELLERBACH CORPORA-
TION, a Nevada corporation,
Defendant–Appellee.

Nos. 87–4029, 88–3536.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1988.

Decided Nov. 24, 1989.

John R. Brooke, Portland, Or., for plaintiff-appellant Robert John Gulden.

Thomas J. Rastetter, Oregon City, Or., for plaintiff-appellant Gregory Steele.

Frank M. Parisi, Portland, Or., for defendant-appellee.

Before BROWNING, TANG and FARRIS, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

A transformer failure released a toxic level of polychlorinated biphenyls (PCBs) onto the floor of Crown Zellerbach's mill in West Linn, Oregon. After three attempts by hazardous waste specialists failed to reduce the PCB level to nontoxic levels, Crown Zellerbach ordered employees Robert Gulden and Gregory Steele to finish the cleanup by scrubbing the floor while on their hands and knees without protective clothing. Both workers acquired body levels of PCBs beyond that considered safe. They filed separate diversity-based suits in federal district court. The district court granted summary judgment to Crown Zellerbach on Gulden's and Steele's causes of action, holding their battery claims to be preempted by the Oregon workers' compensation scheme. The court rejected Steele's fraud claim as preempted by section 301 of the Labor Management Relations Act.[1] We consolidated Gulden's and Steele's appeals and reverse.

I.

The district court granted summary judgment for Crown Zellerbach on Gulden's and Steele's causes of action for battery on the ground there was no evidence Crown Zellerbach intended to injure Gulden and Steele and therefore workers' compensation was their exclusive remedy. Viewing the evidence in the light most favorable to Gulden and Steele, we conclude a reasonable jury could find Crown Zellerbach "had a deliberate intention to injure [Gulden and Steele] or someone else and that [they were] in fact injured as a result of that deliberate intention." *Duk Hwan Chung v. Fred Meyer, Inc.*, 276 Or. 809, 556 P.2d 683, 685 (1976); *see* Or.Rev.Stat. § 656.156(2).

A jury could conclude that coming into contact with PCBs at a strength 500 times Environmental Protection Agency standards—sufficient to produce a body level of PCBs six-to-ten times higher than normal and to trigger serious health concerns—constituted an injury. *See Bakker v. Baza'r, Inc.*, 275 Or. 245, 551 P.2d 1269, 1271 & 1273–74 (1976) (harmful contact constitutes battery).

Under Oregon law, a jury could conclude that the intention to injure—in this case, to expose Gulden and Steele to toxic levels of PCB—was deliberate where the employer had an opportunity to weigh the consequences and to make a conscious

---

1. The district court also granted summary judgment against Gulden's fraud claim, a judgment from which Gulden does not appeal.

choice among possible courses of action. *See Lusk v. Monaco Motor Homes, Inc.,* 97 Or.App. 182, 775 P.2d 891, 894 (1989);[2] *see also Weis v. Allen,* 147 Or. 670, 35 P.2d 478, 482 (1934); *Palmer v. BiMart Co.,* 92 Or.App. 470, 758 P.2d 888, 891–92 (1988). Here, a jury could conclude that Crown Zellerbach made a conscious choice to injure Gulden and Steele based on the following factors: (1) Crown Zellerbach ordered Gulden's and Steele's contact with toxic levels of PCBs without any protective clothing; (2) Crown Zellerbach ordered that contact to continue not for just a short period but for a period of five days; (3) during this five-day period, Crown Zellerbach knew that Gulden's and Steele's clothing was soaked with PCBs; (4) Crown Zellerbach had been warned that the concentration of PCBs greatly exceeded levels authorized by the Environmental Protection Agency standards; and (5) Crown Zellerbach assigned the task of cleanup to two temporary workers unfamiliar with such work rather than contracting with specialists as it had in the past.

It is true that Crown Zellerbach offered evidence that would support an inference that it did not intentionally injure Gulden and Steele by exposing them to toxic levels of PCBs, but that does not justify summary judgment in its favor. As the Oregon Court of Appeals recently explained:

> Here, a jury could infer, from all the circumstances, that defendant failed to provide [safety equipment] *because* it wished to injure plaintiff.... A specific intent to produce injury is not the only permissible inference to be drawn from defendant's apparent obstinacy, but it is one that a jury should be permitted to consider. It is for the finder of fact, not the court on summary judgment, to determine what inferences to draw. Summary judgment is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions.

*Lusk,* 775 P.2d at 895 (quotations, citations and footnote omitted) (emphasis in original).

■ Crown Zellerbach relies on several cases to establish that Oregon courts strictly construe the deliberate intention exception. *See Duk Hwan Chung,* 556 P.2d at 683; *Caline v. Maede,* 239 Or. 239, 396 P.2d 694 (1964); *Heikkila v. Ewen Transfer Co.,* 135 Or. 631, 297 P. 373 (1931); *Jenkins v. Carman Mfg. Co.,* 155 P. 703 (Or.1916). We agree the exception is strictly construed, but none of these cases prevents a plaintiff from maintaining a cause of action against an employer where the evidence is sufficient to support an inference the employer deliberately instructed an employee to injure himself. In all the cases cited by Crown Zellerbach, workers' compensation was held to be the exclusive remedy because the only inference that could be drawn from the evidence was that the employer's actions constituted " 'mere carelessness, recklessness, or negligence.' " *Duk Hwan Chung,* 556 P.2d at 685 (quoting *Heikkila,* 297 P. at 374). In *Jenkins,* for example, the plaintiff was injured by improperly maintained machinery, 155 P. at 704; in *Heikkila,* by a truck with defective brakes, 297 P. at 373. The cases relied upon by Crown Zellerbach were distinguished on this ground by the Oregon Supreme Court in *Weis,* 35 P.2d at 482, and the Oregon Court of Appeals in *Lusk,* 775 P.2d at 894–95.

In contrast, Gulden and Steele have alleged facts which, if true, would support an inference that although Crown Zellerbach was aware that contact with the PCBs would injure Gulden and Steele, Crown Zellerbach nonetheless ordered the two workers to perform their task in a manner requiring them to initiate and maintain contact with the PCBs. An inference from these facts of deliberate intention to injure

---

**2.** There is no merit in Crown Zellerbach's contention that we should not consider *Lusk* to be supplemental authority because it was cited to us after briefing and "does not announce a departure from Oregon law." Fed.R.App.P. 28(j) allows a party to "promptly advise" this court "[w]hen pertinent and significant authorities come to the attention of a party after the party's brief has been filed, or after oral argument but before decision." *Lusk* is such an authority.

Gulden and Steele—that is, to expose them to toxic levels of PCBs—would fall easily within the strictest construction of § 656.156(2).[3]

## II.

The district court granted summary judgment for Crown Zellerbach on Steele's state law fraud claim on the ground this claim was preempted by section 301 of the Labor Management Relations Act.

■ Recent Supreme Court opinions establish two bases upon which a state-law claim may be preempted by section 301. First, section 301 may preempt a state claim "on the basis of the subject matter of the law in question," *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988), as where the " 'claims [are] founded directly on rights created by collective-bargaining agreements,' " *id.* 108 S.Ct. at 1884 n. 10 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987)). Second, where the right is created by state law and not by the collective-bargaining agreement, a claim based upon that right is preempted "if [the application of state law] requires the interpretation of a collective-bargaining agreement." *Id.* 108 S.Ct. at 1885; *see Caterpillar Inc.*, 482 U.S. at 394, 107 S.Ct. at 2430 ("Section 301 governs claims ... 'substantially dependent on analysis of a collective-bargaining agreement.' ") (quoting *Electrial Workers v. Hechler*, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2166 n. 3, 95 L.Ed.2d 791 (1987)).

Accordingly, if, as Steele asserts, his claim is neither based upon Crown Zellerbach's collective-bargaining agreement nor dependent upon an interpretation of that agreement, it is not preempted.[4]

■ Steele contends that ordering him to clean the PCB spill without warning him of the hazards inherent in that task worked a fraud upon him because Oregon law creates a right to be warned of the health and safety risks posed by the cleanup independent of any rights conferred under the collective-bargaining agreement. The district court held Oregon law did not confer such a right because Or.Rev.Stat. § 654.196, which codified the "right to know," was enacted in 1985, after the incident at issue. Long before the "right to know" was codified, however, Oregon courts had held employers liable for breach of an employee's right to be "warned of latent dangers incident to his service." *Voshall v. Northern Pac. Terminal Co.*, 116 Or. 237, 240 P. 891, 893 (1925); *see also, e.g., Ferrari v. Beaver Hill Coal Co.*, 102 P. 1016, 1021–22 (Or.1909). Since Steele's claim rests upon state law and not upon the collective-bargaining agreement, it is not preempted because of its subject matter.

The district court held Steele's claim was preempted because "[e]xamination of plaintiff's claim will require reference to the collective bargaining agreement on several points." The test is somewhat more restrictive. " '[N]ot every dispute ... tangentially involving a provision of a collective-bargaining agreement is preempted by § 301." *Lingle*, 108 S.Ct. at 1885 n. 12 (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985)). Rather, Steele's claim is preempted only if it "turn[s] on any collective-bargaining interpretation." *Id.* 108 S.Ct. at 1881 n. 5.

---

**3.** The district court believed its finding of no evidence of intent compelled the court to strike that portion of Steele's fraud claim alleging that Crown Zellerbach's failure to warn of the risks of PCB exposure constituted intentional infliction of injury. Since we reverse the district court's original finding that the evidence was insufficient to defeat summary judgment on the issue of intent, we also reverse the district court's grant of Crown Zellerbach's motion to strike based on the original finding.

**4.** We reject Steele's assertion that *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), precludes § 301 preemption of his fraud claim. *Farmer* does not apply to § 301 cases. *See Vincent v. Trend W. Technical Corp.*, 828 F.2d 563, 565 (9th Cir.1987).

Neither of the references to the collective-bargaining agreement identified by the district court requires preemption.

The district court held Steele's claim required the court "to look to the agreement to determine what assignments of work defendant was permitted to make." This was error; Steele's claim does not "turn on" the job assignment provisions in the collective-bargaining agreement. All Steele need prove to succeed on his fraud claim is that Oregon law conveyed an independent right to be warned; that Crown Zellerbach's failure to warn Steele of these risks constituted a fraudulent omission upon which Steele relied to his detriment by agreeing to perform the work for less than its true value;[5] and that Steele sustained damage measured by the normal cost to employers of convincing forewarned employees to assume such a risk. *See* Complaint ¶¶ 11–20. None of these elements depends upon an interpretation of the job assignment provisions in Crown Zellerbach's collective-bargaining agreement.

The district court also held that calculation of the damages Steele seeks may require interpretating the wage scale established by the collective-bargaining agreement. Again, it would not follow that Steele's claim is preempted. As the Supreme Court noted in *Lingle:*

> A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state law analysis that does not turn on the agree-

ment. In such a case, federal law would govern the interpretation of the agreement, but the separate state law analysis would not be thereby preempted.

108 S.Ct. at 1885 n. 12 (citation omitted).

REVERSED and REMANDED.

---

5. Whether or not this actually constitutes fraud under Oregon law is irrelevant for purposes of this appeal. Only the preemption issue is before us.