[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
DEFENDANT MOTION TO STRIKE #163
Facts
CT Page 7285
On December 11, 1996, the plaintiffs, Donald and Darlene Shpak, filed a two count third revised complaint[1] against the defendants Dan Beard, Inc., plaintiff Donald Shpak's employer; Daniel Beard, Sr., president of the employer; and Daniel Beard, Jr., secretary of the employer, for injuries sustained by Donald Shpak during the course of his employment with the defendants.
The accident giving rise to this action occurred on July 21, 1993, on the defendants' premises, a facility in which a gravel, stone, and cement business is conducted. The plaintiffs allege that Donald Shpak was an employee of Dan Beard, Inc. and was responsible for the general operation of the wet plant. His duties included lubricating the primary and secondary gears of the no. 1 concrete sand screw. The plaintiffs claim that on July 21, 1993, as Donald Shpak was lubricating the concrete sand screw, his hand came into contact and was drawn into the moving gears which crushed three of his fingers resulting in their amputation.
In the first count the plaintiffs allege that Donald Shpak's injuries were the predictable and probable consequence of the defendants' willful or intentional misconduct and were substantially certain to occur. They claim that the defendants' misconduct was the direct and proximate cause of Donald Shpak's injuries in the following respects: (a) The defendants required that lubrication of the gears be performed while the sand screw was in operation; (b) they refused to allow a safer method of access to the area to be lubricated; (c) they refused to equip the machine with protective guards; (d) they had knowledge that employees were required to lubricate the machine while in operation; (e) they were aware that such practice was unsafe but refused to take corrective action, (f) they failed to provide guards on moving machine parts close to working areas; (g) machines were required to be lubricated in this fashion two or three times a day; (h) defendants specifically trained employees to lubricate the machine while in operation evidencing an "intent or design concerning this known danger." In the second count, the plaintiff, Darlene Shpak, seeks damages for the loss of consortium of her husband as a result of the injuries alleged in count one.
On December 31, 1996, the defendants moved to strike the plaintiffs' third revised complaint on the ground that: (1) the exclusivity provision of the Connecticut Workers' Compensation Act, General Statutes § 31-284 (a), bars the plaintiff's claims; CT Page 7286 (2) the plaintiffs have failed to allege facts sufficient to bring the claim under an exception to the exclusivity provision; and (3) a derivative claim for loss of consortium is not a legally recognized cause of action in claims for intentional torts. The defendants have submitted a memorandum of law in support of their motion. The plaintiffs have not filed a memorandum of law in opposition.
Discussion
"The purpose of a motion to strike is to . . . contest the legal sufficiency of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) NovametrixMedical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 214-15,618 A.2d 25 (1992). A motion to strike "does not admit legalconclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis in original.) Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix MedicalSystems, Inc. v. BOC Group, Inc., supra, 224 Conn. 215.
In addition, a party must file a memorandum in opposition to a motion to strike five days before the motion is scheduled to be heard. Town of Farmington v. Dowling, 22 Conn. App. 564, 566,577 A.2d 1128 (1990). The failure to file a timely opposing memorandum is not necessarily fatal even though the failure to file one at all may serve as a ground for granting a motion to strike. Olshefski v. Stenner, 2 Conn. L. Reptr. 477, 478 (September 27, 1990, Clark, J.)
The defendants argue that the plaintiff's third revised complaint fails to allege facts sufficient to set forth a claim that overcomes the exclusivity provision of the Workers' Compensation Act. Citing General Statutes § 31-284, the defendants argue that they should not be liable further in tort having been liable for workers' compensation benefits. The defendants also contend that the plaintiff's "have essentially alleged negligence under the guise of the terms willful' or `intentional misconduct'" (Memorandum in support, (p. 4) and that, consequently, a tort action is unavailable to them given General Statutes § 31-284 (a). CT Page 7287
Count One: Wilful and Serious Misconduct
The defendants argue that a plaintiff may escape the exclusivity provision of the Workers Compensation Act and pursue a claim against the employer only within the narrow limits of the only recognized exception to the exclusive remedy rule, namely where the employer has intentionally injured the employee. Because the label of `intentional and willful conduct' cannot, without more, change the nature of an action from negligent to wilful, the defendants argue that the exception does not apply to this case, and consequently the motion to strike should be granted since the plaintiffs have tailed to state a cause of action.
Furthermore, the defendants maintain that, because a claim of loss of consortium is derivative of the main claim alleging wilful and serious misconduct, count two must also fail given the legal insufficiency of the first count. In the alternative even if the court found the first count to be legally sufficient, the defendants argue that the loss of consortium claim must fail because such claims are limited to situations in which the injured spouse's cause of action sounds in negligence.
"It is undisputed that the Workers' Compensation Act . . . is the exclusive remedy for injuries sustained by an employee `arising out of and in the course of his employment.'" Bouley v.Norwich, 25 Conn. App. 492, 496, 595 A.2d 884 (1991). "The purpose of the workers compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." Jett v. Dunlap, 179 Conn. 215 217, 425 A.2d 1263 (1979). General Statutes § 31-284 (a) provides in pertinent part: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out and in the course of his employment. . . ."
The Connecticut Supreme Court has "consistently interpreted the exclusivity provisions of the act, General Statutes § 31-284
(a) as a total bar to common law actions brought by employees against employers for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in wilful or serious misconduct." Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 106, 639 A.2d 507 (1994). CT Page 7288
To be considered intentional it is not sufficient that the injury is the direct and proximate result of the employer's act or failure to act: there must be present an affirmative design to injure. "[Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Citations omitted; internal quotation marks omitted.) Doe v. Marselle,38 Conn. App. 360, 367, 660 A.2d 871 (1995), rev'd on other grounds,236 Conn. 845, 660 A.2d 871 (1996). "A wilful and malicious injury is one inflicted intentionally without just cause or excuse. . . . Nor is it sufficient to constitute such an injury that the act resulting in the injury was intentional in the sense that it was the voluntary action of the person involved. Not only the action producing the injury but the resulting injury must be intentional." Jacobs v. Crown, Inc., 7 Conn. App. 296, 299,508 A.2d 812; cert. denied, 200 Conn. 805 (1986).
"A result is intended if the act is done for the purpose ofaccomplishing such a result or with the knowledge that to asubstantial certainty such a result will ensue." (Emphasis added)Suarez v. Dickmont Plastics Corp., Id., 108. Intentional "refers to the consequences of an act . . . [and] denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to follow from it." (Citation omitted; internal quotation marks omitted). Mingachos v. CBS, Inc., 196 Conn. 91, 101, 491 A.2d 368
(1985).
"The known danger involved must go from being `a foreseeable risk which a reasonable man would avoid and become a substantial certainty.'" Suarez v. Dickmont Plastics Corp., supra,229 Conn. 109, quoting W. Prosser, Torts (4th Ed. 1971) § 8, p. 32. "The `substantial certainty' test . . . allows for a plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employer deliberately instructed an employee to injure himself." (Internal quotation marks omitted.) Id., 109-110.
"In terms of intentional torts then, the use of the word 'intent' in the allegations is not a talisman that can change the allegations into colorable claims of true intentional torts. . . . Nor is it any more so with the allegations of a `wilful' act. . . ." (Citations omitted; internal quotation marks CT Page 7289 omitted.) Mingachos v. CBS, Inc., supra, 196 Conn. 101-02. Therefore, in order to circumvent the exclusivity of the Workers' Compensation Act, a plaintiff must plead facts sufficient to support the allegation that the injury has been caused by design, given that "[w]ilfulness and malice alike import intent. . . ."Nolan v. Borkowski, 206 Conn. 495, 501, 538 A.2d 1031 (1988).
"Wilful and serious misconduct means something more than ordinary negligence. Ordinary negligence could never be even serious misconduct, much less wilful misconduct. . . . No misconduct which is thoughtless, needless, inadvertent or of the moment and none which arises from an error of judgment can be wilful and serious misconduct." Greene v. Metal Selling Corp.,3 Conn. App. 40, 45, 484 A.2d 478 (1984). Considering that, to avoid the exclusivity of the act, "the intentional or deliberate act or conduct alleged must have been designed to cause the injury that resulted." Mingachos v. CBS, Inc., supra,196 Conn. 102. The issue in the present case is whether the plaintiff has alleged facts sufficient to establish that the defendants' conduct was `substantially certain to result in injury' as required by the test that the Supreme Court set out in Suarez v.Dickmont Plastics Corp., supra.
In Suarez the plaintiff was seriously injured when, as he was cleaning molten plastic from a plastic molding machine during the course of his employment for the defendant, his fingers were caught by the hydraulically operated plunger which pushed the hot plastic into the mold during the process. The plaintiff alleged that his injuries were caused by the wilful and serious misconduct of the defendant who had refused to allow him to use safer methods.
In opposition to the defendant's motion for summary judgment, the plaintiff in Suarez had presented the expert testimony of a physical engineer who concluded that the defendant's actions, in coercing the employees into using such methods, "crossed the boundary between gross negligence and reckless disregard for the safety of its employees"; that "remedying even one of the numerous unsafe actions could have prevented the injury"; that "it was clear from the combination of factors that the plaintiff's injury `would be, sooner or later, a predictable and probable event.'" (Emphasis added.) Suarez v. Dickmont PlasticsCorp., supra, 229 Conn. 104.
Because the employer in Suarez, although aware of the danger CT Page 7290 involved in the practice, had manifested a total disregard for the safety of the plaintiff which constituted more than the mere failure to provide appropriate safety measures, the court concluded that "the plaintiff's injury was the inevitable and known result of the actions required of by the defendant." Id., 111. The court concluded that, if an actor "knows that the consequences of his or her conduct are certain or substantially certain to result from his or her act and still proceeds with the conduct . . . he or she should be treated by the law as though he or she in fact desired to produce the result." Id., 111. Accordingly, the court held that the employer's conduct was sufficient "to satisfy the narrow exception of the exclusivity provision of the act and to allow the plaintiff to pursue his common law remedy." Id., 100-01.
The present case is distinguishable from Suarez because the plaintiffs have not alleged that the defendant has coerced the plaintiff to engage in the unsafe conduct or has threatened him with termination of employment if he refused to lubricate the equipment as instructed thus evidencing a reckless disregard of "substantially certain" consequence. Nor can it be said, looking at the plaintiff's allegations, that the defendant's actions are sufficient "to support an inference that the employer deliberately has instructed an employee to injure himself."Gulden v. Crown Zellerbach Corp., 890 F.2d 195, 197 (9th Cir. 1989).
In the present case the plaintiffs allege mere conclusions of law, ie., that the defendant's conduct was "wilful and intentional", but fail to substantiate such conclusions with facts sufficient to support the allegations. In addition, plaintiffs' own allegations state that the defendant did not "specifically intended to injure or kill the employee." (Plaintiff's Third Revised Complaint Count one, para. 10(g)).
Although the plaintiff may have alleged sufficient facts from which it could be found that it was highly probable that an injury such as that sustained by the plaintiff could occur, nonetheless it cannot be said that the defendant intended to cause it, since "a strong probability is a different thing from asubstantial certainty without which an actor cannot be said to intend the harm in which his act results." (Emphasis added.)Mingachos v. CBS, Inc., supra, 101. "`Intent . . . is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those CT Page 7291 which the actor believes are substantially certain to follow from what he does.'" Id., quoting Prosser, Torts (4th Ed. 1971)
The plaintiffs' allegations in count one, therefore, fail to state a claim sufficient to overcome the exclusivity provision of the Workers' Compensation Act, since "the common-law liability of the employer cannot, under the almost unanimous rule, . . . be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other conduct of the employer short of genuine intentional injury." (Internal quotation marks omitted.) Id., 108. Consequently, the motion to strike is granted as to count one of the plaintiff's third revised complaint.
Count Two: Loss of Consortium
"The term `consortium' is usually defined as encompassing the services of the wife, the financial support of the husband, and the intangible relations which exist between spouses living together in marriage. . . . These intangible elements are generally described in terms of affection, society, companionship and sexual relations." (Citation omitted; internal quotation marks omitted.) Hopson v. Sr. Mary's Hospital, 176 Conn. 485,487, 408 A.2d 260 (1979). "Any tort causing direct physical injury to one spouse will give rise to a claim for loss of consortium by the other." W. Prosser and W. Keeton, Torts (5th Ed. 1984) § 125, p. 932.
A claim for loss of consortium is derivative of the claim on behalf of the injured spouse. "[B]ecause a consortium action is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits." Hopson v. St. Mary's Hospital, supra,176 Conn. 494. Where the injured spouse's "claim is barred, the derivative claim of loss of consortium is also barred." Murray v.Commissioner of Transportation, 31 Conn. App. 752, 757,626 A.2d 1328 (1993).
The court grants the defendants' motion to strike count one of the third revised complaint, Darlene Shpak's derivative claim for loss of consortium should be stricken as well.
McMahon, J. CT Page 7292