150 P.3d 637 (2007)
Darwin BRAME, Ernest Ford, William Randon, Garrison Ross, Donna L. Shagle, Mike Stearns, Brigitte Skyles, Luterrio Skyles, Cindy Salazar, Janis A. Stuart, John Stuart, Kelly Saatchi, Mohammad Saatchi, Michael D. Schatz, Christy Forsythe, Marvin Fritts, Janet Fritts, Lamont Bush, Margaret Southard, and Carmen Mas, Appellants,
v.
WESTERN STATE HOSPITAL, an Agency of the State of Washington, Respondent.
No. 34817-9-II.
Court of Appeals of Washington, Division 2.
January 17, 2007.
*638 Thomas Douglas Dinwiddie, Attorney at Law, Tacoma, WA, for Appellants.
Richard Steven Puz, Office of the Attorney General, Olympia, WA, for Respondent.
ARMSTRONG, J.
¶ 1 Darwin Brame and other Western State Hospital employees (Employees) appeal the trial court's dismissal of their personal injury claims against the Hospital, arguing that the trial court erred in finding that the Hospital did not deliberately intend to injure them. The Employees cannot show that the Hospital knew the certainty of each assault; and, even if the Employees could show that the Hospital knew the certainty of each assault, they cannot prove that the Hospital willfully disregarded the problem. Accordingly, we affirm.

FACTS
¶ 2 Western State Hospital is a state-owned psychiatric hospital that evaluates and treats individuals with serious, long-term mental illnesses. RCW 72.23.020, .025. The Center for Forensic Services (the Center) is a locked, secure ward at the Hospital that houses patients committed to the Hospital *639 for an assessment of their competency to stand trial,[1] those that have been found not guilty by reason of insanity,[2] and a number of civilly committed patients. Although most of the Center's patients come to the Hospital through the criminal justice system, they have the right to "adequate care and individualized treatment." RCW 10.77.210(1). And hospital staff must make treatment decisions based on the patient's current conduct and mental condition rather than the charges that led to his or her commitment. RCW 10.77.2101.
¶ 3 All hospital patients participate in treatment plans administered by treatment teams, which may include psychiatrists, psychologists, licensed nurses, and social workers. One goal of every Center treatment plan is to reduce the risk that patients pose to themselves, staff, and the community. Despite receiving treatment, a patient's mental health may regress without warning due to ineffective medication, noncompliance with medication, or for other unknown reasons. As a result, patients sometimes assault staff members or other patients.
¶ 4 Between 2001 and 2004, all of the plaintiff Employees worked in the Center and were injured either directly or indirectly when patients assaulted them. Because the facts of the individual assaults are not pertinent to our decision, we describe only three of the Employees' claims.
¶ 5 Darwin Brame worked as a psychiatric security attendant at the Center. On April 23, 2003, Brame attempted to redirect a patient who would not comply with ward rules. The patient grabbed and then hit Brame's shoulder. Brame received compensation for his injury from the Department of Labor and Industries (L & I). Brame also received "assault benefits" from the Hospital under RCW 72.01.045.[3] Clerk's Papers (CP) at 688-93.
¶ 6 Catherine Cantrell worked as an institution counselor at the Center. On October 29, 2004, after Cantrell informed a patient she could not attend a ward event, the patient rushed at Cantrell, hit her in the face, and dragged her to the ground. Cantrell received L & I compensation for her injury. Cantrell also received assault benefits from the Hospital under RCW 72.01.045.
¶ 7 Michael Schatz worked as a psychiatric security nurse at the Center. On February 15, 2002, when Schatz was placing a patient into seclusion, the patient head-butted Schatz on the side of his face. Schatz injured his shoulder while trying to restrain the patient. On October 5, 2003, Schatz attempted to restrain a patient who was hitting another patient. The patient hit Schatz on both shoulders and sat on his hand. Schatz received L & I compensation for his industrial injuries. Schatz also received assault benefits from the Hospital under RCW 72.01.045.
¶ 8 The Employees filed four separate lawsuits against the Hospital in Pierce County Superior Court. By agreement of the parties, the court consolidated the lawsuits.
¶ 9 The court dismissed several claims for failure to state a claim upon which relief can be granted. It also dismissed three claims because those plaintiffs failed to file their claims with the Office of Risk Management as required under RCW 4.92.100 and RCW 4.92.110. Finally, it granted the Hospital's motion for summary judgment as to all remaining claims.
*640 ¶ 10 Washington's Industrial Insurance Act grants an employer immunity from a worker's claim for personal injuries sustained on the job unless the employee can show that the employer intentionally caused the injuries. Thus the issue is whether these Employees' claims fit within the intentional injury exception.

ANALYSIS

I. STANDARD OF REVIEW
¶ 11 We review a summary judgment de novo. Retired Pub. Employees Council of Wash. v. Charles, 148 Wash.2d 602, 612, 62 P.3d 470 (2003). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); Charles, 148 Wash.2d at 612, 62 P.3d 470. In reviewing a summary judgment, we consider all facts and all reasonable inferences from them in the light most favorable to the nonmoving party. Wagg v. Estate of Dunham, 146 Wash.2d 63, 67, 42 P.3d 968 (2002).

II. THE INDUSTRIAL INSURANCE ACT
A. Employer Immunity and the "Deliberate Intent to Injure" Exception
¶ 12 In 1911, the legislature passed the Industrial Insurance Act, which provided injured workers a system of certain, no-fault compensation for injuries on the job while granting employers immunity from civil suits by workers. RCW 51.04.010; Birklid v. Boeing Co., 127 Wash.2d 853, 859, 904 P.2d 278 (1995). The Act generally bars employee lawsuits against employers for on-the-job injuries. RCW 51.04.010.
¶ 13 This bar is subject to a limited exception when an employer intentionally injures an employee:
If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.
RCW 51.24.020. This exception prevents employers who engage in egregious conduct from burdening the industrial insurance risk pool. Birklid, 127 Wash.2d at 859, 904 P.2d 278 (1995).
¶ 14 We interpret the deliberate intention exception narrowly. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 27, 109 P.3d 805 (2005). Neither gross negligence nor failure to observe safety laws or procedures rise to the level of deliberate intention. Vallandigham, 154 Wash.2d at 27, 109 P.3d 805 (citing Birklid, 127 Wash.2d at 860-61, 904 P.2d 278). Even an act that has a substantial certainty of producing injury is insufficient to show a deliberate intent to injure. Vallandigham, 154 Wash.2d at 27, 109 P.3d 805 (citing Birklid, 127 Wash.2d at 860, 904 P.2d 278).
B. The Birklid Test
¶ 15 Until 1995, courts found deliberate intention only in cases where an employer or its agent physically assaulted an employee. Vallandigham, 154 Wash.2d at 27, 109 P.3d 805. But in Birklid, our Supreme Court interpreted the exception to include conduct other than physical assaults. Birklid, 127 Wash.2d at 863, 904 P.2d 278. In that case, the plaintiffs alleged that a supervisor reported to management that fumes from a new product were making employees sick; management denied a request for improved ventilation before increasing use of the product; workers became ill after the product went into full production; and Boeing knew that the symptoms were the result of exposure to the product. Birklid, 127 Wash.2d at 856-57, 904 P.2d 278. The court, finding that the employees had alleged sufficient facts to find deliberate intent on the part of Boeing to injure them, held that deliberate intention exists where the employer (1) has actual knowledge that an injury is certain to occur and (2) willfully disregards that knowledge. Birklid, 127 Wash.2d at 865-66, 904 P.2d 278.
¶ 16 In announcing the test for deliberate intention, the Birklid court rejected the *641 "substantial certainty" test adopted in several other states. Birklid, 127 Wash.2d at 865, 904 P.2d 278. That test allows a claim where the employer knew the injury was substantially certain to occur. Birklid, 127 Wash.2d at 863-64, 904 P.2d 278 (citing Beauchamp v. Dow Chem. Co., 427 Mich. 1, 398 N.W.2d 882 (1986)). The court also rejected Oregon's "conscious weighing" test. Birklid, 127 Wash.2d at 865, 904 P.2d 278. That test permits consideration of "whether the employer had an opportunity consciously to weigh the consequences of its act and knew that someone, not necessarily the plaintiff specifically, would be injured." Birklid, 127 Wash.2d at 865, 904 P.2d 278 (citing Lusk v. Monaco Motor Homes, Inc., 97 Or.App. 182, 775 P.2d 891 (1989)). The court explained that it was "mindful of the narrow interpretation Washington courts have historically given to RCW 51.24.020, and of the appropriate deference four generations of Washington judges have shown to the legislative intent embodied in RCW 51.04.010." Birklid, 127 Wash.2d at 865, 904 P.2d 278.
¶ 17 Since Birklid, the Supreme Court continues to emphasize the need to show actual, not substantial, certainty. For example, in Vallandigham, employees alleged that the school district deliberately intended to injure them because it willfully disregarded its knowledge that a severely disabled special education student would injure them. Vallandigham, 154 Wash.2d at 25-26, 109 P.3d 805. The employees alleged that over the course of a school year the student had injured staff and other students about 96 times, resulting in 7 workers' compensation claims. Vallandigham, 154 Wash.2d at 24, 109 P.3d 805. The school district had taken numerous steps to try to modify the student's behavior, including implementing a behavior plan, hiring a one-on-one aide, and creating an isolation space. Vallandigham, 154 Wash.2d at 24-25, 109 P.3d 805. The court rejected the employees' claims, holding that they met neither prong of the Birklid test. Vallandigham, 154 Wash.2d at 18-19, 109 P.3d 805.
¶ 18 The court emphasized that the first prong "can be met in only very limited circumstances where continued injury is not only substantially certain [to occur] but certain to occur." Vallandigham, 154 Wash.2d at 32, 109 P.3d 805. Foreseeability is not enough to establish deliberate intent to injure an employee, nor is an admission that injury would probably occur. Vallandigham, 154 Wash.2d at 33, 109 P.3d 805. And the plaintiffs' case could not meet this test because "the behavior of a child with special needs is far from predictable"; no one knew that the violent behavior would not stop as quickly as it began. Vallandigham, 154 Wash.2d at 33, 109 P.3d 805. This was unlike Birklid, where the employer knew that continued exposure to the chemical would make employees sick absent increased ventilation. Vallandigham, 154 Wash.2d at 33, 109 P.3d 805.
¶ 19 In addressing the second prong of the test, the court disapproved of two Court of Appeals cases that considered whether the steps the employer took to prevent injury were reasonable and whether they were effective. Vallandigham, 154 Wash.2d at 35, 109 P.3d 805 (citing Hope v. Larry's Mkts., 108 Wash.App. 185, 195, 29 P.3d 1268 (2001); Stenger v. Stanwood Sch. Dist., 95 Wash. App. 802, 813, 977 P.2d 660 (1999)). These tests, according to the court, adopted, at least in part, a negligence standard; the court again emphasized that the deliberate intent exception does not apply in cases of negligence, even gross negligence. Vallandigham, 154 Wash.2d at 35, 109 P.3d 805.
¶ 20 The Employees contend that the trial court erred in granting the Hospital summary judgment because issues of material fact exist as to whether the Hospital deliberately intended to injure them. They argue that the Hospital knew with certainty that patients would assault staff and that it willfully disregarded this knowledge. They point to the history of patient assaults on staff as proof that the Hospital knew with certainty that patients would assault staff in the future. And they assert that the Hospital willfully disregarded this knowledge because it did not effectively train staff in defending themselves against patient assaults and instead implemented a non-violence initiative aimed at eliminating the use of physical restraint of patients.
*642 ¶ 21 Even taking the facts in the light most favorable to the Employees, they cannot meet the stringent requirements of the Birklid test. The Employees do not contend that the Hospital knew that any specific assault would occur. They rely instead on the history of patient-to-staff assaults. But past patient-to-staff assaults demonstrate, at the most, that such assaults are foreseeable, not that they are certain. Foreseeability is not sufficient to establish deliberate intent to injure an employee. Vallandigham, 154 Wash.2d at 33, 109 P.3d 805. In Vallandigham, 96 prior assaults by one student were not sufficient to predict with absolute certainty any particular future assault. Vallandigham, 154 Wash.2d at 33, 109 P.3d 805. Similarly, here the past assaults of hospital patients on hospital staff are not sufficient to create a certainty that any individual patient will assault any individual staff member.
¶ 22 Like the behavior of a child with special needs, the behavior of an individual with mental illness is "far from predictable." Vallandigham, 154 Wash.2d at 33, 109 P.3d 805. A patient's mental health may regress without warning and for unknown reasons. While it may be possible to identify certain "triggers" likely to precede assaultive behavior by a patient, the existence of a trigger does not necessarily mean a patient will commit an assault, nor does the absence of a trigger guarantee the absence of assaults. And no one can say that any individual patient's assaultive behavior will not "cease as quickly as it began." Vallandigham, 154 Wash.2d at 33, 109 P.3d 805.[4] The Hospital did not know with certainty that its patients would assault the Employees.
¶ 23 Even if the Employees could show that the Hospital knew with certainty that their injuries would occur, they cannot show that the Hospital willfully disregarded that knowledge. The Employees contend that the training hospital staff receive on responding to patient assaults is inadequate. They cite Hope, 108 Wash.App. at 195, 29 P.3d 1268, for the proposition that ineffective remedial measures satisfy the willful disregard prong. But the Supreme Court has expressly disapproved of this aspect of the Hope case, reasoning that it improperly imported a negligence standard into the deliberate intent analysis when not even gross negligence constitutes deliberate intent. Vallandigham, 154 Wash.2d at 35, 109 P.3d 805.
¶ 24 Moreover, the Employees concede that the hospital staff do receive training in how to respond to patient assaults, even though they question the training's effectiveness. And the Hospital recently implemented a non-violence initiative that was designed, at least in part, to respond to the problem of patient assaults, both on staff and other patients. Although the Employees assert that the Hospital did not implement any recommendations from a study on protecting staff from patients and reducing staff injuries, they provide no citation to the record to support this assertion. Instead of showing willful disregard for the problem of patient-on-staff assaults, the record shows that the Hospital in fact took steps to alleviate the problem.
¶ 25 Affirmed.
We concur: HOUGHTON, C.J., and HUNT, J.
NOTES
[1] RCW 10.77.090(1)(b) provides that if a defendant is charged with a felony and determined to be incompetent, the court "shall commit the defendant to the custody of [the Hospital] . . . for evaluation and treatment . . . until he or she has regained the competency necessary to understand the proceedings against him or her and assist in his or her own defense."
[2] RCW 10.77.110(1) provides that if a defendant is acquitted of a crime by reason of insanity and "is a substantial danger to other persons, or presents a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions," the court shall order hospitalization of the defendant.
[3] "In recognition of the hazardous nature of employment in state institutions," the legislature created a program to reimburse hospital employees who are the victims of patient assaults. RCW 72.01.045(2). This program supplements L & I benefits in cases where employee negligence did not contribute to the assault and L & I has approved the employee's claim. RCW 72.01.045(3). For purposes of the program, an "assault" is an unauthorized touching of an employee by a patient resulting in physical injury to the employee. RCW 72.01.045(1).
[4] The Employees also argue that the Hospital had a duty to protect them from assaults by patients. They cite Taggart v. State, 118 Wash.2d 195, 822 P.2d 243 (1992), for the proposition that when the Hospital fails in its duty to supervise its patients, "the traditional assault and battery exception to the Worker's [sic] Compensation Act exists." Br. of Appellant at 12. But Taggart addresses the scope of a parole officer's duty to supervise parolees in order to prevent them from injuring third parties. Taggart, 118 Wash.2d at 224-25, 822 P.2d 243. It did not address the Industrial Insurance Act or an employer's liability for harm to employees. The Act bars the Employees' claims unless they come within a statutory exception. RCW 51.04.010. The Employees have not shown how a violation of any duty on the part of the Hospital to protect third parties from harm by its patients satisfies the deliberate intent exception or any other provision of the Act.