# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEFFREY L. COCKRUM and DONNA COCKRUM, husband and wife,<br><br>Appellants,<br><br>v.<br><br>C.H. MURPHY/CLARK-ULLMAN, INC.; NORTH COAST ELECTRIC COMPANY; METROPOLITAN LIFE INSURANCE COMPANY; PFIZER, INC.; P-G INDUSTRIES, INC., as successor-in-interest to PRYOR GIGGEY CO., INC.; THERMO FISHER SCIENTIFIC, INC.; and UNION CARBIDE CORPORATION,<br><br>Defendants,<br><br>HOWMET AEROSPACE, INC., f/k/a ARCONIC INC., as a corporate successor to ALCOA, INC.,<br><br>Respondent. | No. 85182-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Jeffrey and Donna Cockrum appeal the summary judgment dismissal of their personal injury action against Howmet Aerospace, Inc.[1] The Cockrums sued Howmet claiming that Jeffrey Cockrum's mesothelioma was caused by asbestos exposure during his employment at an Alcoa plant. RCW 51.04.010 provides employers immunity from civil suits by workers for workplace

---

[1] Howmet Aerospace, Inc., was formerly known as Arconic, Inc., which was formerly known as Alcoa, Inc. We will refer to "Howmet" as the respondent and "Alcoa" as Cockrum's employer.

injuries, but the Cockrums rely on the deliberate injury exception of RCW 51.24.020. The trial court dismissed the Cockrums' action, concluding there was no genuine issue of material fact as to whether Howmet had actual knowledge that injury was certain to occur. We affirm.

I

Cockrum worked for Alcoa, Inc. at Alcoa Wenatchee Works between 1966 and 1999. Wenatchee Works was an aluminum smelter where raw alumina ore was converted into molten aluminum. Cockrum first worked in the "potrooms" at the plant. His job duties included sampling the pots and "potlining," which entailed lining empty pots with insulation before ore would be added and melted down. In 1969, Cockrum transitioned to working in Alcoa's laboratories. In the quantometer lab, Cockrum was tasked with analyzing "the metal that came out of the pots as a raw material, and then when it went into the furnaces, to make sure that the metal was on-grade for customer specifications." Later, while working in the environmental lab, he tested samples for asbestos from the insulation material and from the material brought up from the ingot plant. To test the samples, Cockrum would take "a piece of the sample, put it into a beaker" and "add[] acid to it. When it changed colors, it gave me result of whether asbestos was present or not." He would then "put it back into the bag, zip[] it up, and call[] them to tell them to come take it away."

In March 2022, Cockrum was diagnosed with mesothelioma, a lung disease caused by asbestos exposure. Cockrum and his wife filed a complaint against Howmet for personal injuries. Howmet moved for summary judgment, asserting

2

the Cockrums' claims against it were barred by RCW 51.04.010 of the Washington Industrial Insurance Act (IIA),Title 51 RCW. In arguing that the Cockrums could not provide evidence satisfying the deliberate intention exception, Howmet relied on the Cockrums' expert's deposition testimony that asbestos exposure is never certain to cause mesothelioma or any other disease.

The trial court concluded that under Walston v. Boeing Co., 181 Wn.2d 391, 395, 334 P.3d 519 (2014), the Cockrums failed to satisfy the deliberate intention exception. The trial court granted Howmet's motion for summary judgment. The Cockrums appeal.

II

This court reviews summary judgment orders de novo. Hadley v. Maxwell, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Peterson v. Groves, 111 Wn. App. 306, 310, 44 P.3d 894 (2002). When considering the evidence, the court draws reasonable inferences in the light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995).

The IIA established a system for workplace related injuries that gave employers immunity from civil suits in return for giving injured workers "a swift, no-fault compensation system for injuries on the job." Birklid v. Boeing Co., 127 Wn.2d 853, 859, 904 P.2d 278 (1995). The IIA does not exempt employers from claims by an employee for injuries resulting "from the deliberate intention of his or her employer to produce such injury." RCW 51.24.020.

3

Birklid held "deliberate intention" means (1) "the employer had actual knowledge that an injury was certain to occur" and (2) the employer "willfully disregarded that knowledge." 127 Wn.2d at 864. "Neither gross negligence" nor "an act that has a substantial certainty of producing injury [are] sufficient to show deliberate intention." Id. at 860. Birklid rejected standards under which a claim would be permitted if the employer knew injury was " 'substantially certain' " to occur, id. at 864-65 (quoting Beauchamp v. Dow Chem. Co., 427 Mich. 1, 21-22, 398 N.W.2d 882 (1986)), or which focused on "whether the employer had an opportunity consciously to weigh the consequences of its act and knew that someone, not necessarily the plaintiff specifically, would be injured." Birklid, 127 Wn.2d at 865 (citing Lusk v. Monaco Motor Homes, Inc., 97 Or. App. 182, 775 P.2d 891 (1989)).

Birklid arose out of Boeing's use of phenol-formaldehyde resin at a fabrication facility in 1987. Id. at 856. A general supervisor wrote that the resin caused " 'dizziness, dryness in nose and throat, burning eyes, and upset stomach' " in employees and the general supervisor " 'anticipate[d] this problem to increase as temperatures rise and production increases.' " Id. Boeing declined to improve ventilation. Id. When full production began, "workers experienced dermatitis, rashes, nausea, headaches, and dizziness." Id. Boeing's general manager said "he knew these complaints were reactions to working with the phenolic material." Id. Birklid concluded that Boeing knew in advance its workers would become ill, yet put the chemicals into production anyway. Id. at 863. The

facts were sufficient for a jury to find that Boeing had actual knowledge that injury was certain to occur. See id. at 865-66.

Walston applied Birklid in an asbestos case. Walston, 181 Wn.2d at 393. Walston sued Boeing, claiming that his mesothelioma was caused by his exposure to asbestos while employed by the company. Id. at 394-95. Although Walston alleged he was exposed to asbestos throughout his career at Boeing, he pointed to a specific exposure in 1985. Id. at 394. That year, maintenance workers rewrapped overhead pipes to contain flaking asbestos insulations. Id. Walston and other employees continued to work below. Id. The repairs created visible dust and debris. Id. Walston's request to work in a different location during the pipe repair was denied, but a supervisor recommended he avoid working directly underneath the overhead repairs. Id. He was diagnosed with mesothelioma in 2010. Id. Walston alleged Boeing deliberately intended to cause his injuries when it exposed him to asbestos during this repair work. Id. at 395. One of Walston's experts "conceded that asbestos exposure is not certain to cause mesothelioma or any other disease." Id. at 394. Boeing did not dispute that it was aware that asbestos was a hazardous material in 1985. Id. Instead, it argued it did not have actual knowledge that Walston was certain to be injured. Id.

The Supreme Court agreed, holding in that context "[a]n act that has substantial certainty of producing injury is insufficient to meet" the " 'deliberate intention' standard." Id. at 396-97. The court noted Walston had no evidence (as the Birklid plaintiff did) that Boeing had actual knowledge of injury because it did not observe immediate and visible injury due to asbestos exposure. Walston, 181

Wn.2d at 398. The court held that because "asbestos exposure is not certain to cause mesothelioma or any other disease" and because it causes only "a *risk* of disease," Walston did not meet the Birklid standard. Id. at 397. At the same time, the court explained that establishing observed immediate and visible injury was not necessarily the only way to show deliberate intention:

> The Court of Appeals explained that immediate and visible injury is one way to raise an issue of material fact as to whether an employer had constructive knowledge that injury was certain to occur. Walston [v. Boeing Co.], 173 [Wn.] App [271,] 284, 294 P.3d 759 [2013]. The court noted that this was how the employees raised an issue of material fact in Birklid and other cases involving exposure to toxic chemicals. Id. Since immediate and visible injury was not present in this case, Walston could not use that to show that Boeing had knowledge of certain injury. However, the Court of Appeals did not hold that immediate and visible injury is the *only* way to show an employer's knowledge that injury was certain to occur.

Id. at 398.

Citing this paragraph, the Cockrums argue their evidence is distinguishable from that presented in Walston, and equivalent to that in Birklid, because their evidence shows Alcoa knew of "continuing illnesses among employees" currently manifesting at the time of Cockrum's asbestos exposure. The Cockrums' evidence is that between 1953 and 1982, Alcoa observed its employees contract asbestosis and mesothelioma due to asbestos exposure. In 1953, Dr. Woodrow Murphy examined an x-ray of an Alcoa employee and found "thickened pleura between the right upper and middle lobes . . . and some fibrosis [in] each upper lung." In 1972, a former Alcoa employee filled out a worker's compensation claim for asbestosis, and related his injury to his work in the ingot plant at Alcoa. In 1979, Alcoa received a letter from Dr. Theodore Fuller discussing the diagnosis of an Alcoa employee

6

who had been employed for the past 15 years. Dr. Fuller stated, "In view of his history of exposure to asbestos, I think the odds are that this uni-lateral asymptomatic pleural density is an early mesothelioma." In 1982, Dr. Fuller again sent a letter to Alcoa to diagnose another Alcoa employee. After learning the patient was exposed to asbestos dust from his job at Alcoa, Dr. Fuller wrote, "[T]here is no question but what these calcified pleural plaques represent a pleural asbestosis."

This evidence does not show that Alcoa had actual knowledge that Cockrum was certain to be injured, but amounts at most to knowledge of the hazardousness of asbestos that was present in Walston, and was insufficient. The Cockrums argue this must be a faulty interpretation of the IIA, reasoning that their expert testified that asbestos and carcinogens are never "certain" to cause disease, yet such diseases, when related to the workplace, are included in the definition of injury in RCW 51.24.030(3), and are subject to the same treatment as injuries are under RCW 51.32.180. But the IIA's covering an ailment does not imply a particular amenability to its being deliberately caused, or proven to be deliberately caused. The Cockrums' evidence fails to rise above the evidence in Walston, so summary judgment was appropriate.

III

Quoting Andrus v. Department of Transportation, 128 Wn. App 895, 900-01, 117 P.3d 1152 (2005), Howmet argues RAP 18.9(a) sanctions are appropriate because the Cockrums' argument is " 'precluded by well-established and binding precedent that [the appellant] does not distinguish.' " (Alteration in original.)

7

RAP 18.9(a) authorizes the appellate court to impose sanctions when a party brings a frivolous appeal. An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal. Lutz Tile, Inc. v. Krech, 136 Wn. App. 899, 906, 151 P.3d 219 (2007). All doubts as to whether an appeal is frivolous are resolved in favor of the appellant. Streater v. White, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980). With doubts resolved in their favor, the Cockrums' arguments are not frivolous. We deny Howmet's request for sanctions.

Affirmed.

Birk, J.

WE CONCUR:

Coburn, J.

Hazelrigg, A.C.J.