FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 29, 2025

*[signature]*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 29, 2025

*[signature]*
SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEFFERY L. COCKRUM<br><br>Petitioner,<br><br>v.<br><br>C.H. MURPHY/CLARK-ULLMAN, INC.; NORTH COAST ELECTRIC COMPANY; METROPOLITAN LIFE INSURANCE COMPANY; PFIZER, INC.; P-G INDUSTRIES, INC., as successor-in-interest to PRYOR GIGGEY CO., INC.; THERMO FISHER SCIENTIFIC, INC.; and UNION CARBIDE CORPORATION,<br><br>Defendants,<br><br>HOWMET AEROSPACE, INC., f/k/a/ ARCONIC, INC., as corporate successor to ALCOA, INC.,<br><br>Respondent. | No. 102881-4<br><br>EN BANC<br><br>Filed: May 29, 2025 |

MONTOYA-LEWIS, J.—Jeffrey Cockrum developed mesothelioma after decades of working for Alcoa Inc., where he was repeatedly exposed to asbestos, in

some instances without any protective gear at all. It is undisputed that Alcoa knowingly exposed its employees to asbestos, knowing that asbestos was hazardous and could lead to long-term injuries. It was several decades after Cockrum's exposures to asbestos that the disease was discovered and diagnosed because of the latent nature of this cancer, like other cancers and diseases. After being diagnosed with this form of cancer linked to asbestos exposure, Cockrum brought a personal injury action against Howmet Aerospace, Inc. (formerly known as Arconic Inc., a corporate successor to Alcoa),[1] claiming his employer deliberately intended to injure him by exposing him to asbestos without proper warnings or protections. Based on Howmet's assertions that employers are immune from suit absent their actual knowledge that injury was certain to occur, the superior court granted Howmet's motion for summary judgment and dismissed Cockrum's suit. The Court of Appeals affirmed. We reverse.

Howmet contends an employee cannot pursue such a civil action against their employer for workplace injuries caused by asbestos exposure. Washington's Industrial Insurance Act (IIA)[2] generally provides that workers are entitled to compensation without regard to employer fault, and employers are immune from lawsuits arising from workplace injuries. RCW 51.04.010. That said, employers are

---

[1] We refer to "Howmet" as the respondent and "Alcoa" as Cockrum's employer.
[2] Title 51 RCW.

not immune from lawsuits if an "injury results to a worker from the deliberate intention of [their] employer to produce such injury." RCW 51.24.020. The trial court granted summary judgment to Howmet on this basis, concluding Cockrum could not satisfy the deliberate injury exception. The issue before this court is whether the evidence Cockrum presented creates a genuine issue of material fact that Alcoa had actual knowledge an injury was certain to occur. Under this court's prior decision in *Walston v. Boeing Co.*, 181 Wn.2d 391, 334 P.3d 519 (2014), no employee could sue for a latent disease like mesothelioma because they could never satisfy the level of certainty required there; Howmet would prevail and latent diseases like cancer would not be injuries any employee could sue for, regardless of their employer's intent. This court does not lightly set aside precedent, but justice requires us to admit our mistakes when we make them and to overrule precedent that is demonstrably incorrect and harmful. For the reasons explained below, we now recognize *Walston* to be such a decision and must be overruled.

We conclude that in latent disease cases, virtual certainty is sufficient to prove the employer's actual knowledge that injury was certain to occur. This does not alter the standard of actual knowledge injury is certain to occur that is generally required to satisfy the deliberate injury exception for immediate and visible types of injuries; this virtual certainty standard is limited only to latent disease cases. We recognize Washington courts' long-standing narrow reading of RCW 51.24.020 and conclude

3

that within this narrow exception, there is room for the possibility of a tort action when an employer deliberately causes injury in the form of disease. We remand this case to the trial court for summary judgment to be determined under the virtual certainty standard.

## FACTS AND PROCEDURAL HISTORY

### A.    Factual Background

Cockrum was employed at Alcoa's Wenatchee Works aluminum facility from 1967 to 1997, where he was exposed to asbestos numerous times throughout his career. He worked in dusty areas as a laborer and recalls wearing paper masks in those areas but does not recall Alcoa requiring him or his coworkers to use any respiratory protection. Cockrum believes the best possibility he had of being exposed to asbestos was working in the facility's environmental lab, where he tested samples for asbestos without any protective gear. Cockrum claims Alcoa never warned him about the hazardous properties of asbestos material, nor did it provide respiratory protection for workers in its labs. 1 Clerk's Papers (CP) at 94, 97; 2 CP at 664-67.

Evidence in the record reveals that prior to and contemporaneous with Cockrum's asbestos exposures, Alcoa knew asbestos exposure was hazardous and that asbestos-related diseases could manifest many years after exposure. *See, e.g.*, 1 CP at 366 (memorandum from Alcoa (July 6, 1982) ("For a number of years, Alcoa has recognized the very serious potential health hazard represented by the various

forms of asbestos use in our plant. Exposure to asbestos fibers can lead to asbestosis and various forms of cancer.")); *see also id.* at 292-389; 2 CP at 731-37, 751-52, 765-70, 774. Further, Alcoa had a medical monitoring program for its employees, which provided evidence that from at least 1953 onward, Alcoa's employees were developing asbestos disease symptoms, such as thickened pleura, calcified pleural plaques, fibrosis in the lungs, and some were even developing asbestos-related diseases, such as asbestosis and early mesothelioma. Alcoa ultimately knew of the harms of asbestos in its facilities prior to and contemporaneous with Cockrum's exposures.

Cockrum was diagnosed with mesothelioma, a cancer caused by asbestos exposure, in March 2022. His doctors noted his "history of occupational asbestos exposure at Alcoa" as part of their diagnosis. 2 CP at 673. Cockrum's medical expert opined that his mesothelioma was caused by his cumulative exposures to asbestos. The expert explained that latent diseases "do not result in immediate apparent injury upon exposure but instead do not manifest until sufficient time has lapsed. This is true for all human cancers." *Id.* at 617. However, the expert also testified that asbestos-related disease is never certain to result from asbestos exposure or even from developing pleural plaques. In fact, the expert was "not aware of *any carcinogen* for which exposure at a particular dose is medically certain to cause cancer in everyone." *Id.* at 618 (emphasis added).

5

B.      Procedural History

Cockrum brought a personal injury suit against Howmet, the corporate successor to his employer, Alcoa.[3] Cockrum claimed his mesothelioma was proximately caused by asbestos exposure sustained while working for Alcoa. He further claimed this was a deliberate injury under RCW 51.24.020 because Alcoa had actual knowledge injury was certain to occur from asbestos exposure, yet it willfully disregarded that knowledge by continuously exposing him to asbestos without proper warning or protection.

The superior court granted summary judgment for Howmet, concluding Cockrum could not demonstrate actual knowledge necessary to meet the deliberate injury exception. 3 CP at 1052-53. It reasoned that *Walston* precluded Cockrum's lawsuit because the facts were "materially indistinguishable" and "Walston considered and rejected, again in material part, the plaintiffs' theories here." Rep. of Proc. at 27. The court declined to reach the issue of willful disregard as it found Cockrum's case failed on the actual knowledge prong.

The Court of Appeals affirmed in an unpublished opinion. *Cockrum v. C.H. Murphy/Clark-Ullman, Inc.*, No. 85182-9-I, slip op. at 2, 8 (Wash. Ct. App. Feb. 12, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/851829.pdf.

---

[3] Cockrum also sued a number of entities that manufactured, sold, distributed, installed, specified, used, or purchased asbestos products. Howmet is the only named defendant participating in this appeal.

It concluded the evidence demonstrated that at most, Alcoa knew of the hazards of asbestos, which, like in *Walston*, did not amount to actual knowledge that injury was certain to occur. The court particularly noted Cockrum's medical expert conceding that asbestos-related disease is never certain to result from asbestos exposure or even from pleural plaques. Like the trial court, the Court of Appeals did not reach the willful disregard prong, as it concluded summary judgment was proper based on Cockrum's failure to demonstrate actual knowledge. We granted review.

## ANALYSIS

We review the grant of a motion for summary judgment de novo. *Benjamin v. Wash. State Bar Ass'n*, 138 Wn.2d 506, 515, 980 P.2d 742 (1999). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). All evidence must be viewed in the light most favorable to the nonmoving party. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993).

In 1911, in a time of burgeoning industry, Washington enacted what later became the IIA as the result of a "grand compromise" between employers and employees, granting injured employees "swift, no-fault compensation" for on-the-job injuries and granting employers immunity from civil suits arising from such injuries. *Birklid v. Boeing Co.*, 127 Wn.2d 853, 859, 904 P.2d 278 (1995) (citing *Stertz v. Indus. Ins. Comm'n*, 91 Wash. 588, 590-91, 158 P. 256 (1916);

RCW 51.04.010). Part of the compromise, however, included that "[i]f injury results to a worker from the deliberate intention of [their] employer to produce such injury," then the worker has the right to pursue recovery through civil suit "for any damages in excess of compensation and benefits paid or payable" under the IIA. RCW 51.24.020. As the *Birklid* court articulated, when employers deliberately intend to injure employees, "[e]mployees' remedies . . . should not be limited by the IIA" because "[e]mployers who engage in such egregious conduct should not burden and compromise the industrial insurance risk pool." 127 Wn.2d at 859.

Up until the 1990s, Washington courts found "deliberate intention" only when an employer or its agent physically assaulted an employee. *Id*. at 861-62. But, in *Birklid*, this court concluded that limiting the deliberate injury exception to assault cases "effectively read the statutory exception to the IIA's exclusive remedy policy nearly out of existence." *Id.* at 862. "If physical assault were the perimeter of the exception the Legislature intended, however, it could have said so directly rather than using the words 'deliberate intention . . . to produce such injury.' The statutory words must, therefore, mean something more than assault and battery." *Id.* at 862-63 (alteration in original) (quoting RCW 51.24.020). This court recognized that though the deliberate injury exception is narrow, it still encompasses any injury caused by deliberate intention, meaning "'a specific intent, and not merely

carelessness or negligence, however gross.'"[4] *Id.* at 860 (quoting *Delthony v. Standard Furniture Co.*, 119 Wash. 298, 300, 205 P. 379 (1922) (citing *Jenkins v. Carman Mfg. Co.*, 79 Or. 448, 454, 155 P. 703 (1916))). Further, the court reaffirmed the employer's intent must relate to the injury, not the act causing the injury. *Id.* at 861. Under these strictures, the court adopted a two-pronged test, holding an employer had deliberate intention to injure an employee when it (1) "had actual knowledge that an injury was certain to occur" and (2) "willfully disregarded that knowledge." *Id.* at 865.

Applying this two-pronged test to the facts in *Birklid*, the court found that under prior precedent, the plaintiffs' evidence could not have justified a finding of deliberate intention because they were not assaulted, but under the new test, the evidence was sufficient to survive summary judgment. *Id.* at 862-63. There, Boeing employees who were part of preproduction testing for a material containing phenol-formaldehyde resin complained of symptoms such as "'dizziness, dryness in nose

---

[4] This court rejected deliberate intention tests from other jurisdictions that did not align with Washington courts' narrow interpretation of RCW 51.24.020 and the long-standing deference given to legislative intent embodied in RCW 51.04.010. *Birklid*, 127 Wn.2d at 865. It rejected the "substantial certainty" test, which defines intentional torts more broadly and recognizes deliberate intention "'[i]f the actor knows that the consequences are certain, or substantially certain, to result from [their] act, and still goes ahead.'" *Id.* at 864 (quoting *Beauchamp v. Dow Chem. Co.*, 427 Mich. 1, 21, 398 N.W.2d 882 (1986)). It also rejected Oregon's "conscious weighing" test, which recognizes deliberate intention if "the employer had an opportunity consciously to weigh the consequences of its act and knew that someone, not necessarily the plaintiff specifically, would be injured." *Id.* at 865 (citing *Lusk v. Monaco Motor Homes, Inc.*, 97 Or. App. 182, 775 P.2d 891 (1989)).

and throat, burning eyes, and upset stomach.'" *Id.* at 856 (quoting the record). "As Boeing's supervisor predicted, when full production began" using the same resin, workers experienced similar symptoms. *Id.* The court concluded that Boeing deliberately intended to injure the plaintiffs because it had observed the preproduction workers becoming ill from exposure to the resin when it put the resin into production. *Id.* at 862-63. Boeing willfully disregarded actual knowledge of continuing injuries to its employees when it "knew in advance its workers would become ill from the phenol-formaldehyde fumes, yet put the new resin into production." *Id.* at 863.

Since *Birklid*, Washington courts have found plaintiffs alleged facts sufficient to support an inference of deliberate intention in only a few cases—almost exclusively cases similar to *Birklid* where employers "knew that the employees were suffering from chemical-related illnesses and that, unless the working environment was changed, continuing injury was certain." *Baker v. Schatz*, 80 Wn. App. 775, 783, 912 P.2d 501 (1996); *see also Hope v. Larry's Mkts.*, 108 Wn. App. 185, 29 P.3d 1268 (2001). In other words, following *Birklid*, plaintiffs have been able to satisfy the deliberate injury exception in only two circumstances: (1) physical assault and (2) exposure to toxic chemicals causing continuous,

immediate, and visible injury.[5] Courts have declined to find actual knowledge when injuries were not *certain* to occur as the result of hazardous exposures, even if the employers knew of the hazards and that they were likely or probable to cause injuries. *See, e.g.*, *Garibay v. Advanced Silicon Materials, Inc.*, 139 Wn. App. 231, 238-39, 159 P.3d 494 (2007) (although employer knew or should have known that a rupture of a pipe was imminent or certain to eventually occur, the employer did not have actual knowledge that the injury to the plaintiff was certain to occur); *Vallandigham*, 154 Wn.2d at 18 (despite high probability that a student who had repeatedly harmed school staff would injure school staff again, the student's behavior was so unpredictable that "the school district here could not have been certain that its strategies for modifying [the student's] behavior would fail such that [the student] would continue to injure school staff").

Our case law has treated an injury in the form of disease that takes time to manifest (like cancer) distinct from other types of injury, like rashes or burns that occur very quickly after exposure. Further, when workplace exposures result in

---

[5] There is only one case post-*Birklid* where facts were sufficient to justify a finding that an employer deliberately intended to injure an employee that did *not* involve exposure to toxic chemicals causing continuous immediate and visible injury. In *Michelbrink v. Washington State Patrol*, 191 Wn. App. 414, 419-20, 363 P.3d 6 (2015), the court found that there could have been deliberate intent when the Washington State Patrol, the plaintiff's employer, shot the plaintiff with a Taser during a work training and he eventually developed a fracture in his vertebrae and a bulged disc as a result of the electric shock. The court reasoned that the employer physically assaulted the plaintiff by shooting him with the Taser, and it knew in doing so that *an injury* was certain to occur, even if it did not foresee that specific injury. *Id.* at 430.

11

disease, our precedent has rendered it *impossible* to prove the actual knowledge prong of *Birklid*'s test for deliberate injury. In 2014, this court closed the door on proving actual knowledge injury was certain to occur in asbestos-related diseases—and all latent diseases—when it decided *Walston*.

In *Walston,* the plaintiff-employee was exposed to asbestos throughout the decades he worked for Boeing; he was later diagnosed with mesothelioma, as "caused by inhaling asbestos fibers." 181 Wn.2d at 394. It was undisputed that Boeing was aware of the hazards of asbestos exposure by the time of the plaintiff's exposure; that asbestos exposure could manifest into diseases like cancer, even decades after exposure; and that recommended safety precautions could be taken to reduce asbestos exposure. *Id.* at 395. Despite such knowledge, the court concluded that the plaintiffs could not show the employer had *actual knowledge that injury was certain* to occur because, as the plaintiff's expert testified, asbestos exposure is never *certain* to cause mesothelioma or any other disease. *Id.* at 394, 397. Additionally, the court rejected that plaintiff's claim that the employer's actual knowledge of employees developing asymptomatic cellular-level injury from asbestos exposure could satisfy the deliberate injury exception, finding that such asymptomatic cellular-level injuries (1) are not themselves compensable injuries, and (2) create only a *risk* of compensable injury. *Id.* at 398; *accord Shellenbarger v. Longview Fibre Co.*, 125 Wn. App. 41, 103 P.3d 807 (2004) (employer may have

12

been negligent in exposing employees to asbestos but evidence did not amount to actual knowledge that injury was certain to occur when employer thought the workplace was safe and did not know of any employees exhibiting signs of injury at the time of exposure), *review denied* 154 Wn.2d 1021 (2005).

The dissent in that 5-4 decision challenged the majority's conclusion that "certainty" under the deliberate intention standard set forth in *Birklid* means "absolute certainty that a particular plaintiff will develop a particular disease." *Walston*, 181 Wn.2d at 403 (Wiggins, J., dissenting). The dissent reasoned that in *Birklid*, the employer did not need to "foretell every specific harm or victim" and, in fact, the employer "did not know which workers would get sick, whether the injuries would be compensable, or the severity of illnesses workers would experience." *Id.* Additionally, the dissent opined that the unique qualities of diseases arising from exposure to toxic substances "makes it near impossible to predict with absolute certainty" the injuries that will result from such exposures. *Id.* at 401. In so doing, the dissent referred to *Birklid*'s prediction of that result; the dissent observed that "[r]equiring 100 percent certainty would once again read the statutory exception out of existence in the context of disease" and, further, would violate the legislature's clear intent of including diseases in the exception by defining diseases as injuries under the chapter. *Id.* at 403-04 (citing RCW 51.24.030(3)). The dissent urged that recognizing deliberately caused diseases under the deliberate injury exception would

13

not compromise the no-fault system created by the IIA but, rather, would hold employers accountable for deliberate conduct as the IIA envisioned. *Id.* at 410-11.

Now, in this case, where the facts are materially indistinguishable from those in *Walston*, the Court of Appeals concluded that since asbestos exposure is never certain to cause asbestos disease, Cockrum's deliberate intention claim was precluded by the holding in *Walston*. *Cockrum*, No. 85182-9-I, slip op. at 6-7. Under *Walston*, latent diseases such as asbestos-related diseases can *never* satisfy the first prong of the deliberate intention test; while we seemed to indicate it would be possible to do so in that opinion, after reviewing subsequent decisions, pragmatically speaking, it seems to be impossible.

Although we do not lightly set aside precedent, we will do so upon clear showing it is both incorrect and harmful. *State v. Crossguns*, 199 Wn.2d 282, 290, 505 P.3d 529 (2022); *State v. Scherf*, 192 Wn.2d 350, 379, 429 P.3d 776 (2018) ("A decision is incorrect if it is based on an inconsistency with the court's precedent, with the State's constitution or statutes, or with public policy considerations. A decision is harmful if it has a detrimental impact on the public interest."). Thus, today we conclude *Walston*'s exclusion of diseases from recovery under RCW 51.24.020 incorrectly contradicts the plain text of the statute and public policy behind the IIA. The holding in *Walston* is also harmful because it denies relief to employees who happen to be injured in the form of disease that may take years to

manifest rather than immediate and visible injuries. Therefore, *Walston* must be overruled.

First, *Walston*'s requirement of complete certainty that a disease will occur is incorrect because it is inconsistent with the text of the IIA and the policy that drives it. If a statute's meaning is plain on its face, we "must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). RCW 51.24.020 allows an employee to bring a cause of action against their employer if an injury results "from the deliberate intention" of the employer. The term "certainty" does not appear anywhere in the statute; rather, the *Birklid* court used "actual knowledge that an injury was certain to occur" to help define the term "deliberate intention" as used in the statute. 127 Wn.2d at 865. *Walston* took it further, concluding that as "asbestos exposure is not certain to cause mesothelioma or any other disease," an employer cannot have actual knowledge a disease such as mesothelioma is certain to occur. 181 Wn.2d at 397. By that logic, workplace-caused diseases are excluded from the deliberate intention statute, though the plain language of the statute draws no such distinction. In fact, the IIA defines "injury" specifically for the purposes of the chapter permitting certain causes of action to *include* any "disease" compensable

under the IIA. RCW 51.24.030(3).[6] But under *Walston*, diseases cannot be compensable under that chapter, contrary to the statutory text, because of the standard this court set. This may be the result the *Walston* court was trying to avoid, but the IIA does not seem to support that apparently categorical conclusion.

Further, the IIA reflects the legislative policy that employers who do deliberately intend to injure their employees do not enjoy the IIA's general immunity from lawsuits for workplace injuries. *Birklid*, 127 Wn.2d at 859-60. Neither that policy nor the text of the IIA treat diseases differently from other injuries because the purpose of the deliberate intention exception is to hold employers accountable based on their *intent to cause injury*, not based on the *type of injury that results*. *See id.* at 873 (the deliberate intention exception is meant to "'deter intentional wrongdoing by employers'" (quoting *Provost v. Puget Sound Power and Light Co.*, 103 Wn.2d 750, 753, 696 P.2d 1238 (1985)));

---

[6] While the IIA elsewhere provides a different definition of "injury" as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom" under RCW 51.08.100, it also provides that words in the IIA shall have the meaning given in chapter 51.08 RCW, "[u]nless the context indicates otherwise." RCW 51.08.010. The specific definition of "injury" in chapter 51.24 RCW is explicit context provided by the legislature that this particular definition applies to the chapter that permits causes of action like this one. *See Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 356, 340 P.3d 849 (2015) ("A general statutory provision must yield to a more specific statutory provision." (citing *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629-30, 869 P.2d 1034 (1994); *Kustura v. Dep't of Lab. & Indus.*, 169 Wn.2d 81, 91, 233 P.3d 853 (2010))). The fact that the legislature chose to apply the definition of "injury" including diseases to the entirety of chapter 51.24 RCW rather than making the choice to limit the definition shows intent to depart from the definition of "injury" under RCW 51.08.100 and, rather, include diseases for the purpose of the deliberate intention exception under RCW 51.24.020. RCW 51.24.030(3).

*see also Harry v. Buse Timber & Sales, Inc.*, 166 Wn.2d 1, 19, 201 P.3d 1011 (2009) ("A core purpose of the IIA is to allocate the cost of workplace injuries to the industry that produces them, thereby motivating employers to make workplaces safer."); *see also* Br. of Amicus Curiae Dep't of Lab. & Indus. at 4 ("exposure to the expenses of the deliberate injury tort dissuades employers from perpetuating deliberate exposure to asbestos"), 22 ("Employers should not be permitted to play Russian roulette with workers' lives.").

Scientific understanding of latent diseases and their causes may have evolved since the passage of the IIA (and will likely continue to evolve), but the policy of providing redress for deliberately caused workplace injuries has not. *Walston* is incorrect because it adds words to the statute where there are none (excluding diseases caused by deliberate intention), renders other language superfluous (RCW 51.24.030(3)'s inclusion of "disease" as a type of injury compensable in a cause of action under that chapter), and undermines the policy of providing a cause of action for deliberately intended workplace injuries including diseases.

Second, *Walston* is harmful because it denies recovery for diseases caused by employers' deliberate intent. "Employees' remedies for deliberate injury by employers should not be limited by the IIA. Employers who engage in such egregious conduct should not burden and compromise the industrial insurance risk pool." *Birklid*, 127 Wn.2d at 859. As discussed, since the law requires absolute

certainty under *Walston*, this means employers are immune from suit for not only cancers like mesothelioma, but for *any* latent disease caused by their deliberate intent because it is "near impossible to predict with absolute certainty how each exposure will affect a particular individual." 181 Wn.2d 401 (Wiggins, J., dissenting). That rule means employers can avoid liability for requiring employees to handle nuclear waste without protection or requiring employees to smoke two packs of cigarettes every day, resulting in employees eventually developing cancer. The employer conduct in those scenarios is more than gross negligence; rather, it crosses into the realm of deliberate intention. Under the logic in *Walston*, any employee who contracts a disease arising from exposure to a toxic substance and their employer's deliberate intent to produce that injury has no recourse under RCW 51.24.020. That result is both harmful and absurd, given the legislature's intent behind the exception. Therefore, we overrule *Walston* as clearly incorrect and harmful.

Contrary to counsel's contentions, there is no need to disturb the long-standing precedent acknowledged by and continued in *Birklid*. In *Birklid*, the court's task was to clarify that the deliberate intention exception applies to more than just assault cases because up to that point, our courts had "effectively read the statutory exception to the IIA's exclusive remedy policy nearly out of existence." 127 Wn.2d at 862. Now, recognizing that *Walston* effectively read the exception out of existence for a category of injuries, our task is to give effect to the legislature's decision to

include diseases as injuries within that exception. Given the unique characteristics of latent diseases in contrast to the immediate and visible injuries contemplated by our precedent, it is necessary to clarify when an employer may have deliberate intention to cause such an injury in line with the legislative intent and statutory text of RCW 51.24.020. We hold that *virtual* certainty is sufficient to prove actual knowledge in latent disease cases. This degree of certainty is consistent with both purposes of the deliberate intention exception and the holding in *Birklid*—shielding employers from liability when injuries result from accidents, but still holding employers accountable in the narrow circumstances where there is deliberate intent to injure. *Id.* at 863 ("There was no accident here.").

Virtual certainty that a latent disease will occur may be evidenced by a number of factual circumstances, such as (1) the employer's knowledge of ongoing, repeated development of symptoms known to be associated with the development of latent disease over time, (2) the employer's knowledge of symptoms developing in employees similarly situated to the plaintiff-employee, (3) the timing of such symptoms developing prior to or contemporaneous with the plaintiff-employee's exposure(s), and (4) whether the exposure arises from a common major cause within the employer's control. This is a nonexclusive set of factors, as we recognize both that the individual facts of a case may be relevant and that we cannot predict the evolution of scientific understanding surrounding the development of diseases from

workplace exposures. Although a person with symptoms that could potentially develop into disease is not guaranteed to develop a latent disease, such symptoms do "imply a lifelong elevated risk for . . . cancer." 2 CP at 807. There are circumstances under which an employer may have sufficient knowledge of the hazardousness of the exposure, the existence of symptoms linked to latent disease, and the causal relationship between the two for the employer to form actual knowledge disease is virtually certain to occur. In those circumstances, the actual knowledge prong of the deliberate injury exception is satisfied.

There is a notable legal difference between negligence and virtual certainty that an injury will occur. *Birklid*, 127 Wn.2d at 860 (quoting *Delthony*, 119 Wash. at 300). Employers remain immune for negligently caused injuries, including disease. *See id.* at 863 ("There was no accident here."); *see also* 9 LEX K. LARSON ET AL., LARSON'S WORKERS' COMPENSATION LAW § 103.03, at 103-9 (rev. ed. 2024) ("[W]hat is being tested [in deliberate injury exception cases] is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of the intentional versus the accidental quality of the precise event producing injury."). Part of the "grand compromise" of the IIA, however, is that employees must be able to bring civil claims to hold employers accountable for deliberate injuries caused by their employer. *Birklid*, 127 Wn.2d at 859. Even under the narrow reading of the deliberate intention exception affirmed by decades of

Washington precedent, there is room for liability where injury in the form of disease results from the deliberate intention of the employer. RCW 51.24.020.

As long as disease is a type of injury compensable under the IIA, the law must account for the uniqueness of a disease as a type of injury and allow for recovery when the employer is virtually certain disease will occur. The *Birklid* certainty standard remains for cases where injuries *are* immediate and visible, such as chemical exposures causing rashes, nausea, dizziness, etc., like in *Birklid*, *Baker*, and *Hope*. However, the standard to prove deliberate intention for causing latent diseases must be different from the standard set forth in *Birklid* due to the different nature of such injuries. Without such a standard, employers who know disease is virtually certain to occur in employees based on employees developing known disease symptoms would be excused from liability and escape their responsibility to bear the cost of appropriate remedial measures, which would be contrary to the text and policy of the IIA. *See Birklid*, 127 Wn.2d at 859-60, 873.

We hold that a plaintiff can satisfy the deliberate injury exception under RCW 51.24.020 and *Birklid* if they demonstrate the employer had actual knowledge that latent diseases are virtually certain to occur and willfully disregard such knowledge. *Birklid* is a two-pronged test: a plaintiff must demonstrate both that the employer had the requisite knowledge of the certainty of injury *and* that the employer willfully disregarded that knowledge. *Id.* at 865. Thus, even if a plaintiff

21

demonstrates actual knowledge of virtual certainty, an employer may not be liable if it took known remedial measures within its control. Here, the trial court granted summary judgment to Howmet on the basis of the actual knowledge prong under *Walston* and did not reach the second prong of willful disregard. *Walston* is now overruled. We therefore reverse and remand to the trial court to reevaluate summary judgment under the actual knowledge standard we adopt today.

## CONCLUSION

In latent disease cases, an employer's virtual certainty that disease will occur satisfies the actual knowledge prong of the IIA's deliberate injury exception. We reverse and remand to the trial court for further proceedings consistent with this opinion.

Montoya-Lewis, J.

WE CONCUR:

Stephens, C.J.

Gordon McCloud, J.

Yu, J.

Whitener, J.

González, J.

Vanderwood, J.P.T.

23

*Cockrum v. C.H. Murphy/Clark-Ullman, Inc.*

No. 102881-4

MADSEN, J. (dissenting)—Washington's legislature long ago decided that workers would receive swift, no-fault compensation for injuries suffered on the job rather than through civil litigation. Lawmakers enacted this grand compromise in 1911, which later became the Industrial Insurance Act (IIA), Title 51 RCW. In exchange for a guarantee of workers' compensation, employers were given immunity from most lawsuits. *Stertz v. Indus. Ins. Comm'n*, 91 Wash. 588, 590-91, 158 P. 256 (1916). An exception to employer immunity is for *deliberate* injury. RCW 51.24.020.

Thirty years ago, this court established the test for the deliberate injury exception: an employer must have "actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." *Birklid v. Boeing Co.*, 127 Wn.2d 853, 865, 904 P.2d 278 (1995). We applied this test in *Walston v. Boeing Co.*, 181Wn.2d 391, 398-99, 334 P.3d 519 (2014), concluding that a plaintiff did not satisfy the exception because asbestos is not certain to cause injury.

In spite of established precedent, the majority views asbestos claims as a matter of first impression and allows Jeffrey Cockrum's suit to proceed under the deliberate intent

to injure exception. To reach this result, the majority takes the extraordinary step of overruling *Walston*—which no party asked us to do—and adopts a test this court already rejected in *Birklid*.

In my view, precedent is clear. Cockrum did not show that his employer, Howmet Aerospace Inc., had actual knowledge that asbestos exposure would produce *certain* injury. Therefore, summary judgment for Howmet was properly granted. The majority dislikes this outcome. Nevertheless, it is the only outcome possible that preserves the grand compromise. In over 100 years, the legislature has not amended the deliberate injury exception. If that exception is to be broadened, it is the legislature that should do so with public input and considered deliberation. I respectfully dissent.

1. Deliberate Intent Exception

The IIA is the "grand compromise" between the interests of employers and workers injured on the job. *Birklid*, 127 Wn.2d at 859. The Act "was designed to be a comprehensive and exclusive compensation system." 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 12:6, at 572 (5th ed 2020). While the statute was intended to be liberally construed in favor of coverage, *Dep't of Lab. & Indus. v. Lyons Enters., Inc.*, 185 Wn.2d 721, 734, 374 P.3d 1097 (2016), we interpret exceptions narrowly. *See Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 27, 109 P.3d 805 (2005). The legislature did not grant immunity to employers who injured employees intentionally. An employee may sue an employer in

2

tort if an "injury results to a worker from the deliberate intention of [their] employer to produce such injury." RCW 51.24.020.

Before 1995, Washington courts interpreted the deliberate intent exception to apply only to intentional torts, that is, when an employer or agent committed an assault on an employee. *Birklid*, 127 Wn.2d at 861-62 (citing *Perry v. Beverage*, 121 Wash. 652, 209 P. 1102 (1922), 214 P. 146 (1923); *Mason v. Kenyon Zero Storage*, 71 Wn. App. 5, 856 P.2d 410 (1993)). Even gross negligence did not satisfy the exception. *Id*. at 860 (quoting *Delthony v. Standard Furniture Co.*, 119 Wash. 298, 300, 205 P. 379 (1922)).

*Birklid* noted that the focus on intentional torts "effectively read the statutory exception . . . out of existence" and sought to provide a clearer articulation. *Id*. at 862. First, *Birklid* examined iterations of the deliberate intent test from other states: the "substantial certainty" line of cases in which an actor is substantially certain that a result will occur from an act and still goes ahead, and the conscious weighing test in which an employer weighed the consequences of an act and knew someone, not necessarily the plaintiff specifically, would be injured. *Id*. at 864-65.[1] *Birklid* rejected these tests as too

---

[1] These variations of the deliberate intent test were adopted in Michigan, North Carolina, West Virginia, Ohio, South Dakota, Louisiana, and Oregon. *Beauchamp v. Dow Chem. Co.*, 427 Mich. 1, 4-5, 398 N.W.2d 882 (1986); *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991) (plurality opinion); *Mandolidis v. Elkins Indus., Inc.*, 161 W. Va. 695, 246 S.E.2d 907 (1978) (plurality opinion); *Blankenship v. Cincinnati Milacron Chems., Inc.*, 69 Ohio St. 2d 608, 433 N.E.2d 572 (1982); *VerBouwens v. Hamm Woods Prods.*, 334 N.W.2d 874 (S.D. 1983), *overruled in part by Holscher v. Valley Queen Cheese Factory*, 2006 SD 35, 713 N.W.2d 555, 568 n.2; *Bazley v. Tortorich*, 397 So. 2d 475 (La. 1981); *Lusk v. Monaco Motor Homes, Inc.*, 97 Or. App. 182, 775 P.2d 891 (1989).

"expansive" in light of Washington courts' historically narrow reading of RCW 51.24.020. *Id*. at 864, 865.

Instead, *Birklid* formed a narrow test for determining deliberate injury: the employer "had actual knowledge that an injury was certain to occur" and "willfully disregarded that knowledge." *Id*. at 865.

Applying this test, *Birklid* held that the plaintiffs' deliberate injury suit overcame summary judgment. The plaintiffs were employed by Boeing and were exposed to a chemical resin. Before putting the resin into full production, Boeing conducted a preliminary test. The employees exposed during the pretest complained of dizziness, dry nose and throat, eye burning, and stomach upset. A supervisor notified Boeing management of these results, cautioned that the problem would increase during production, and requested improved ventilation. This request was denied. Once the resin was used in full production, employees experienced dermatitis, rashes, nausea, headaches, dizziness, and fainting. In light of this evidence, *Birklid* concluded that Boeing knew in advance that its workers would become ill from the resin but went forward with production resulting in injuries.

*Birklid* brought the deliberate intent exception beyond physical assault and into chemical exposure cases, but most suits continued to reflect physical assaults. In *Vallandigham*, a school's employees asserted the deliberate intent exception based on the district's knowledge that a disabled student would injure them. 154 Wn.2d at 25-26. Despite the school's attempt to mitigate the situation, the employees produced evidence

4

that the student had committed 96 injuries over the school year and produced 7 workers' compensation claims. *Id*. at 24.

This court held that the school employees had not satisfied *Birklid*. *Vallandigham* explained that demonstrating an employer's actual knowledge "can be met in only very limited circumstances where continued injury is not only substantially certain, but *certain* to occur." *Id*. at 32. Foreseeability and probability that an injury would occur were insufficient, as were the unpredictable actions of a child with disabilities. *Id*. at 33.

The Court of Appeals confronted what appears to be the first post-*Birklid* chemical exposure case in *Baker v. Schatz*, 80 Wn. App. 775, 912 P.2d 501 (1996). There, employees sued for exposure to toxic chemicals, relying on facts similar to *Birklid*: breathing difficulties that developed into bronchitis and pneumonia, daily nausea, headaches, dizziness, skin rashes, and fainting. The employees repeatedly complained to their employer about these injuries, but the employer denied that the chemicals caused any health problems. The trial court denied the employer's motion for summary judgment. The Court of Appeals reviewed *Birklid* and observed that the deliberate injury exception requires employers to know "that injury was *certain* to occur." *Id*. at 783 (emphasis added). The court concluded that the plaintiffs alleged facts supporting an inference that the employer knew its employees were suffering from chemical-related illness and continuing injury was certain. Like *Birklid*, the employer in *Baker* knew exposure to chemicals "would cause and did cause injury." *Id*. at 784.

5

Similar to *Birklid* and *Baker*, the Court of Appeals reaffirmed that chemical exposure could constitute deliberate intent in *Hope v. Larry's Markets*, 108 Wn. App. 185, 194, 29 P.3d 1268 (2001). In *Hope*, an employer began using industrial-strength cleaners that could cause severe skin irritation and employees began experiencing rashes and blisters. The injured employees complained several times, even providing a doctor's note stating that chemical exposure caused the severe rashes. The employer denied that the chemicals were dangerous and required employees to use them, providing minimal safety precautions. An employee sued under the deliberate intent to injure exception, which the trial court dismissed. The Court of Appeals reviewed the dismissal as a summary judgment motion and reversed, concluding that the employee's evidence showed repeated complaints that chemical exposure continuously caused injuries, sufficiently establishing "'actual knowledge that an injury was certain to occur.'" *Id*. at 193 (quoting *Birklid*, 127 Wn.2d at 865), 194.

The Court of Appeals directly addressed an asbestos deliberate intent claim in *Shellenbarger v. Longview Fibre Co.*, 125 Wn. App. 41, 103 P.3d 807 (2004). The court affirmed summary judgment for the employer in this case. The employer was aware of the dangers of asbestos during the 1960s when the complaining employee was exposed and eventually developed lung disease and asbestosis. The Court of Appeals noted that *Birklid* "adopted a literal meaning of 'certain injury' when it expressly declined to adopt the 'substantial certainty' test used in some other states." *Id*. at 47. *Birklid* requires certainty, and "[c]ertainty leaves no room for chance." *Id*. The court also observed that

exposure to asbestos does not *always* result in injury to every person and that other employees at Longview Fibre did not exhibit signs of injury. Therefore, the Court of Appeals held, a reasonable finder of fact could not conclude the employer knew the complaining employee, or any other employee, would be injured by exposure to asbestos.

This court addressed an asbestos claim in *Walston*. There, a Boeing employee was exposed to asbestos over many years, eventually developing mesothelioma. Experts concluded that the disease was caused by an exposure incident where pipe insulation was being repaired in the ceiling above the plaintiff's work area. Though the insulation workers wore personal protective equipment, the workers below did not. Boeing supervisors denied employee requests to relocate and recommended employees avoid the area below the ceiling repairs. Importantly, the plaintiff's medical experts "conceded that asbestos exposure is not certain to cause mesothelioma or any other disease." *Walston*, 181 Wn.2d at 394.

*Walston* concluded that Boeing was entitled to summary judgment pursuant to this court's deliberate intent precedent. The *Birklid* test requires an employer to know that an injury was "certain to occur." 127 Wn.2d at 865. A probable or even substantially certain injury is not sufficient to show deliberate intent, nor is disregard of a *risk* of injury. *Walston*, 181 Wn.2d at 397 (quoting *Vallandigham*, 154 Wn.2d at 21, 36, 28). Because asbestos exposure is not certain to cause mesothelioma or any other disease, *Walston* concluded that the plaintiff did not raise an issue of material fact as to whether Boeing actually knew injury was "*certain to occur*." *Id*. at 397.

Further, *Walston* disagreed that deliberate intent is satisfied as long as evidence shows *someone*, not necessarily the plaintiff, is certain to be injured. *Birklid* considered that argument when it rejected Oregon's conscious weighing test. *Walston* also clarified that deliberate intent to injure does not *require* immediate and visible injury—it is simply one way to raise an issue of material fact as to an employer's knowledge of certain injury.

Finally, *Walston* disagreed that certain injury occurs based on cellular level injury from asbestos, and even so, cellular injury without symptoms is not a compensable injury. Compensable injury (mesothelioma, for example) is a *risk* but is not *certain* to occur from asbestos exposure. Because certain injury is required pursuant to *Birklid*, cellular injury does not meet the deliberate intent standard.

The dissent in *Walston* would have held that *Birklid*'s "certainty" requirement "does not mean absolute certainty." *Id*. at 403 (Wiggins, J., dissenting). The dissent characterized *Birklid* as requiring proof that an employer had a "high degree of confidence that injury would result." *Id*. The majority's interpretation, the dissent asserted, would render the deliberate intent exception unavailable for diseases that the IIA includes as an injury. *Id*. at 403-04 (citing RCW 51.24.030(3)). The dissent also argued that "certainty can be achieved with less" than literal certainty that a specific result would occur based on the difficulties of proving diseases stemming from chemical exposure. *Id*. at 406. Instead, the dissent would have interpreted "certainty" to mean "virtual certainty" that injury will occur. *Id*. at 410. Anything more stringent, the dissent claimed, would allow an employer to escape liability contrary to the IIA. *Id*. at 411.

Taken together, *Birklid* and its progeny have maintained a narrow avenue for injured workers to sue in tort under the deliberate intent exception. To prove actual knowledge, an injury must be certain to occur. *Birklid*, 127 Wn.2d at 865; *Shellenbarger*, 125 Wn. App. at 47 ("The Washington Supreme Court adopted a literal meaning of 'certain injury.'"). Probable injury or injury that is virtually or substantially certain is insufficient. *Walston*, 181 Wn.2d at 397; *Birklid*, 127 Wn.2d at 865. Immediate visible injury is not required but is one means of showing an employer had knowledge that injury was certain to occur. *Walston*, 181 Wn.2d at 398.

Washington's chemical exposure cases compel the outcome here. The facts of Cockrum's case are practically indistinguishable from *Walston*. Cockrum, like the plaintiff in *Walston*, worked in an area where he was exposed to asbestos. Neither Cockrum nor the employee in *Walston* was warned that asbestos was dangerous nor did they wear protective equipment when working around the chemical. Both plaintiffs later developed mesothelioma caused by workplace exposure to asbestos but did not exhibit immediate injuries postexposure. Experts in both cases conceded that asbestos exposure is not certain to cause mesothelioma or any other disease. Both employers were aware that asbestos was hazardous.

In short, "[c]ertainty leaves no room for chance." *Shellenbarger*, 125 Wn. App. at 46. Asbestos exposure does not result in disease in every person, thus it creates a substantial risk of injury. *Walston*, 181 Wn.2d at 397. *Birklid* requires more, however. Certain injury must occur. 127 Wn.2d at 864-65. The evidence presented in this case

9

shows that asbestos exposure risked injury, but it does not demonstrate that Howmet had actual knowledge that injury was *certain* to occur. *See Walston*, 181 Wn.2d at 397; *Birklid*, 127 Wn.2d at 864.[2]

Legislative acquiescence further supports *Walston*'s interpretation of RCW 51.24.020. "When considering challenges to previous *statutory* interpretations, '[t]his court presumes that the legislature is aware of judicial interpretations of its enactments and takes its failure to amend a statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision.'" *State v. Otton*, 185 Wn.2d 673, 685-86, 374 P.3d 1108 (2016) (alteration in original) (quoting *City of Federal Way v. Koenig*, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009)). While evidence of legislative acquiescence is not conclusive, it is a factor to consider. *Fast v. Kennewick Pub. Hosp. Dist.*, 187 Wn.2d 27, 39-40, 384 P.3d 232 (2016) (quoting *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 392, 687 P.2d 195 (1984)).

From *Perry* and *Delthony* in 1922, to *Birklid* in 1995, and through *Walston* in 2014, the legislature has not amended RCW 51.24.020 in response to this court's narrow interpretation of the deliberate intent exception. Had *Walston*'s holding on asbestos-related claims been contrary to the legislature's intent, it is reasonable that lawmakers would have changed the statute in response. That has not occurred. Therefore, as we

---

[2] Though Cockrum contends that Howmet had evidence of its employees developing symptoms of nonmalignant asbestos-related disease, this does not prove actual knowledge that disease like cancer or mesothelioma *would* occur in exposed employees. The evidence of continuing illness shows Howmet knew that asbestos caused the risk of disease, not that it would result in a compensable injury to any of its employees.

recognized in *State v. Blake*, 197 Wn.2d 170, 174, 481 P.3d 521 (2021), given the

principles of legislative acquiescence and stare decisis, the legislature rather than the

court must change the statute's intent.

Washington's system recognizes the reality that employees who develop certain

diseases cannot sue in tort, but it also guarantees that workers will receive compensation

regardless of their employer's fault.  This certainty is the outcome of the grand

compromise made more than a century ago.  Cockrum, like the plaintiff in *Walston*,

cannot demonstrate that Howmet had actual knowledge of certain injury pursuant to

RCW 51.24.020.  Thus, summary judgment was appropriate.

2.  Overruling *Walston*

As a procedural matter, only the State, acting as amicus curiae, contends that

*Walston* and *Birklid* should be abandoned.  Br. of Amicus Curiae Dep't of Lab. & Indus.

at 14-18.  Appellate courts do not generally decide issues presented solely by amicus and

raised for the first time on appeal. *State v. Duncan*, 185 Wn.2d 430, 440, 374 P.3d 83

(2016); *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 621, 465 P.2d 657 (1970)

("Normally the rule is that an issue or theory not presented to the trial court will not be

considered by the Supreme Court for the first time on appeal."); RAP 2.5(a).  For that

reason alone, we should not reach the issue.

The majority would presumably answer that we have authority to address any

matter necessary to reach a proper decision.  *State v. Cantu*, 156 Wn.2d 819, 822 n.1, 132

P.3d 725 (2006) (citing *Siegler v. Kuhlman*, 81 Wn.2d 448, 502 P.2d 1181 (1972)).  But,

"arriving at a proper decision" demands more than just this court's desire to revisit a settled issue. As noted, overruling *Walston* was not raised at trial or in the Court of Appeals. Nor did this court direct the parties to submit additional briefing to address the issue, as we have often done. RAP 12.1(b); *e.g.*, *State v. Aho*, 137 Wn.2d 736, 741, 975 P.2d 512 (1999); *Greengo v. Pub. Emps. Mut. Ins. Co.*, 135 Wn.2d 799, 813, 959 P.2d 657 (1998); *Siegler*, 81 Wn.2d at 462 (Neill, J., dissenting).[3] I agree that this court has inherent authority to reach any matter necessary for a just decision. I disagree with the court's decision to do so here considering the issue was raised for the first time in this court by amicus and without direct input from the parties.

I also disagree with the majority's decision to overturn *Walston*. Majority at 14-18. This court does not set aside precedent lightly. *State v. Kier*, 164 Wn.2d 798, 804, 194 P.3d 212 (2008). Legal precedent must operate in a reasonably certain, consistent, and predictable manner to allow citizens to guide their conduct and permit judges to render their decisions with some measure of confidence. *State v. Stalker*, 152 Wn. App. 805, 810-11, 219 P.3d 722 (2009) (citing *In re Pers. Restraint of Mercer*, 108 Wn.2d 714, 720-21, 741 P.2d 559 (1987)). This, the doctrine of stare decisis, gives stability and clarity in the law, ensuring that it will not be altered due to "'incautious action or the whims of current holders of judicial office.'" *Id*. at 811 (quoting *Lunsford v. Saberhagen*

---

[3] We have recognized that there are occasions when an issue is purely legal and a legal violation is "so apparent" that additional briefing is unnecessary. *Aho*, 137 Wn.2d at 741. Whether to overturn a past decision is rarely apparent, and this court should be wary of wading into such complicated waters without the benefit of briefing from parties as well as amici that squarely addresses and robustly debates the issue.

*Holdings, Inc.*, 166 Wn.2d 264, 278, 208 P.3d 1092 (2009)). Courts may change a rule of law "'"when reason so requires."'" *Mercer*, 108 Wn.2d at 721 (quoting *House v. Erwin*, 81 Wn.2d 345, 348, 501 P.2d 1221 (1972), *rev'd on reh'g*, 83 Wn.2d 898, 524 P.2d 911 (1974) (quoting *In re Rts. to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970))). The party seeking to overrule a case bears the burden of demonstrating that a judicial decision is clearly "incorrect and harmful." *Id*.

The majority concludes that *Walston* is clearly incorrect because it contradicts the text of RCW 51.24.020 and the policy underlying the IIA. Majority at 14-15. To the contrary—it is the majority's assertion that is clearly without merit when considered in light of the historic interpretation of RCW 51.24.020. Indeed, one would think the legislature would have noticed the supposed contradiction sometime in the last 100-plus years since our court's initial construction in *Perry* and *Delthony*.

Moreover, we have "rejected invitations to overrule prior decisions based on arguments that were adequately considered and rejected in the original decisions themselves." *State v. Barber*, 170 Wn.2d 854, 864-65, 248 P.3d 494 (2011) (citing *Key Design Inc. v. Moser*, 138 Wn.2d 875, 883, 983 P.2d 653 (1999) (noting the various complaints against the decision were "not new" and had already been "considered and rejected"); *Brower v. State*, 137 Wn.2d 44, 75, 969 P.2d 42 (1998) (explaining that a case is not lightly overturned where "the varying views on the issue [were] thoroughly explored in the case"); *Brutsche v. City of Kent*, 164 Wn.2d 664, 682, 193 P.3d 110

13

(2008) (rejecting a challenge based on "the same arguments that were thoroughly considered and decided" in the original case)).

This case does not present a new issue or one of first impression. *See Brower*, 137 Wn.2d at 74-75. *Walston* already addressed asbestos-related diseases pursuant to facts practically indistinguishable from the present case and thoroughly explored the varying views on the matter. *See id.* at 75. As noted above, Cockrum did not argue that *Walston* is incorrect or harmful.

Rather than reject Cockrum's argument that *Walston* can be distinguished (it cannot), the majority accepts amicus's invitation to overturn the case and adopts a "virtual certainty" test, which can only have been taken from the *Walston* dissent. 181 Wn.2d at 410 (Wiggins, J., dissenting) ("An intentional wrong must amount to a virtual certainty that bodily injury or death will result."); majority at 19 ("We hold that *virtual certainty* is sufficient to prove actual knowledge in latent disease cases."). The court was already presented with the opportunity to adopt the virtual certainty test in *Walston*. It declined.

Further confusing matters, the *Walston* dissent declared that *Birklid* accommodates virtual certainty and at the same time recognized that it is encompassed by substantial certainty, which *Birklid* rejected. 181 Wn.2d at 406 n.5 (citing *Van Dunk v. Reckson Assocs. Realty Corp.*, 210 N.J. 449, 460-61, 45 A.3d 965 (2012) (substantial certain standard requires a virtual certainty)); *Birklid*, 127 Wn.2d at 865 ("We decline to adopt

the 'substantial certainty' test."). In adopting the virtual certainty test,[4] the majority

conflicts with *Birklid* and reads in a special exception to the exception—literal certainty

is still required for all other claims but only virtual certainty for latent disease. *See*

majority at 3. The majority hamstrings future courts and litigants, forcing them into a

quixotic choice: follow *Birklid*, which rejected the substantial/virtual certainty test, or

follow the majority's virtual certainty test and consider *Birklid* overruled sub silentio.

*See Lunsford*, 166 Wn.2d at 280 ("Where we have expressed a clear rule of law . . . we

will not—and should not—overrule it sub silentio.").

Further, *Walston* is not inconsistent with the text of the IIA. *See* majority at 15.

The majority takes issue with *Walston* for adding words to RCW 51.24.020 because the

term "certainty" does not appear in the statute. *Id*. at 15, 17. This objection must be

made to *Birklid* as well, as it interpreted the deliberate intent exception to mean that an

employer must have actual knowledge that injury was "certain to occur." 127 Wn.2d at

865.

---

[4] If the deliberate injury test was rooted in the common law, the majority's decision to reimagine it would rest on firmer ground. *Senear v. Daily J.-Am.*, 97 Wn.2d 148, 152, 641 P.2d 1180 (1982) (common law is shaped and refined by judges). A rule tested by experience and found lacking can be reformulated. *Id*. ("Common law is not static. It is consistent with reason and common sense . . . 'Its principles are not mere printed fiats, but are living tools to be used in solving emergent problems.'" (quoting *Mills v. Orcas Power & Light Co.*, 56 Wn.2d 807, 819, 355 P.2d 781 (1960))). This case is governed by statute, not common law. The issue has been acted on by the legislature, and we have interpreted that legislative enactment. RCW 51.24.020; *Walston*, 181 Wn.2d at 397-98; *Birklid*, 127 Wn.2d at 865. Our discretion to reexamine and reformulate the deliberate injury test in light of today's facts is contrary to the principle of stare decisis. *See Stalker*, 152 Wn. App. at 811. "'[R]espect for precedence is strongest in the area of statutory construction.'" *Deggs v. Asbestos Corp. Ltd.*, 186 Wn.2d 716, 730, 381 P.3d 32 (2016) (internal quotation marks omitted) (quoting *Hubbard v. United States*, 514 U.S. 695, 711, 115 S. Ct. 1754, 131 L. Ed. 2d 779 (1995) (plurality opinion)).

The majority builds on this objection. *Walston* concluded that "asbestos exposure is not certain to cause mesothelioma or any other disease"; then, according to the majority, all workplace-caused diseases are excluded from the deliberate intent exception. 181 Wn.2d at 394; majority at 15. But *Walston* did not make such a broad holding, expressly or by implication. That case concerned solely asbestos-related diseases. Though its application of *Birklid*'s certainty test to toxic exposures undoubtedly makes such claims more difficult to prove, that does not mean workplace-caused diseases are foreclosed categorically. *See* majority at 16, 19. As the Court of Appeals observed, coverage of "an ailment does not imply a particular amenability to its being deliberately caused, or proven to be deliberately caused." *Cockrum v. C.H. Murphy/Clerk-Ullman, Inc.*, No. 85182-9-I, slip op. at 7 (Wash. Ct. App. Feb. 12, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/851829.pdf.[5]

Nor does *Walston* undermine the policy of the IIA. Majority at 17. The IIA resolved competing interests in workplace tort suits. Employees receive swift, no-fault compensation for workplace injuries in exchange for employer immunity, except for injuries that were deliberately intended. *Birklid*, 127 Wn.2d at 859. The policy motivating the exception has "sound roots." *Id*. Employers who engage in egregious

---

[5] The majority acknowledges that abandoning a prior decision rests on a *clear* showing that it is incorrect and harmful. Majority at 14. Yet the majority's reasoning is replete with equivocal language. *E.g.*, *id*. at 14 (stating that *Walston* "*seemed* to indicate" it was possible that asbestos claims could satisfy the deliberate intent exception, but it now "*seems*" impossible (emphasis added)), 16 ("[T]he IIA does not *seem* to support that *apparently* categorical conclusion." (emphasis added)). Such uncertain language is far from a clear showing.

16

conduct such as deliberately intending to injure their workers should not burden and compromise the industrial insurance risk pool. *Id*. *Birklid* continued Washington's historically narrow interpretation of the deliberate intent exception. *Id*. at 859-60, 865. *Walston* applied *Birklid*, narrowing the exception's application to certain diseases. It is the majority's decision here that upsets this balance, undermining *Birklid* and the grand compromise itself.

CONCLUSION

I disagree with the majority's expansion of the deliberate intent exception based solely on its desire to revisit and overrule *Walston*, particularly when no party has asked us to do so. We should instead follow established precedent. Cockrum's case is materially indistinguishable from *Walston*. The evidence shows that asbestos does not result in injurious disease to every exposed person. Asbestos-related diseases are a risk, but not certain to occur, as *Walston* and *Birklid* require. We should therefore conclude that Cockrum does not satisfy the actual knowledge requirement of the exemption and affirm the Court of Appeals. However reluctant we may be to uphold the sometimes harsh reality of our workers' compensation system, that is the grand compromise. Altering that bargain is a matter for the legislature, not this court. With these considerations in mind, I respectfully dissent.

_____
Madsen, J.

_____
Johnson, J.